716 P.2d 28

**CHANEY BUILDING CO.,**
Plaintiff/Appellee,

v.

**CITY' OF TUCSON,**
Defendant/Appellant.

No. 18338–PR.

Supreme Court of Arizona,
En Banc.

March 6, 1986.
Reconsideration Denied April 22, 1986.

Norris L. Ganson, Monroe & Kofron, P.C., by John E. Kofron, Tucson, for plaintiff/appellee.

Frederick S. Dean, Tucson City Atty., Tobin Rosen, Asst. Tucson City Atty., Tucson, for defendant/appellant.

GORDON, Vice Chief Justice.

This is a case involving the construction of a fire station in Tucson, Arizona. John R. Kulseth Associates, Ltd. (Kulseth) entered into a contract with the City of Tucson (Tucson) dated October 27, 1980, to furnish architectural services for the design of a structure known as Fire Station 7. On January 27, 1982, Chaney Building Co., Inc. (Chaney) entered into a contract with Tucson to build Fire Station 7. The contract contained a provision which required Chaney to complete the building within 245 days, but this provision was later extended 45 days by a contract change order. However, Chaney did not complete the building within the agreed upon time frame and as of February 28, 1983, the building was 97% complete according to Tucson's estimate for payment.

On April 28, 1983, Chaney received a letter from Tucson notifying Chaney that the building contract between the two parties was terminated as of May 5, 1983. The letter read in part, "[Tucson] will no longer accept your firm's unending delay in completing the work in the above-mentioned project". Tucson hired another contractor to complete the project using retention money withheld from Chaney's contract. Tucson claimed certain work on the building was done improperly by Chaney, but the main factor relied upon by Tucson in the termination of the contract was the delay in the completion of the project.

Chaney filed suit against Tucson alleging breach of contract. Chaney claimed that it had performed its obligations under the contract and was owed $142,554.81 by Tucson. Chaney subsequently filed an amended complaint, again seeking relief against Tucson for breach of contract and against Kulseth for negligence. Chaney alleged that Kulseth negligently prepared the plans and specifications for the building and "as a result of errors in the plans and specifications [Chaney] incurred additional costs beyond the contract bid price". Shortly before trial, Chaney, Tucson and Kulseth executed a stipulation for the dismissal of Kulseth from the action with prejudice. The record on review gives no indication of the underlying reasons for the stipulation.

A jury trial proceeded between Chaney and Tucson. Chaney's first witness was its president, Earl Chaney, who offered testimony regarding problems with the plans and specifications. This subject was a designated topic in the parties' pretrial statement. Three days into trial Tucson objected to testimony regarding the adequacy of the plans and moved for a mistrial. The motion was supported by Arizona case law on the subject of collateral estoppel. Tucson argued that since Kulseth had been dismissed with prejudice and the claim against Kulseth was for negligent preparation of the plans, it was error for Chaney to introduce evidence of defects in the plans. Tucson further argued that the dismissal of Kulseth operated as an adjudication on the merits "of the fact that there was no negligence" in the design plans. The trial

court overruled the objection and denied the motion for mistrial.

The trial continued with testimony from both sides introduced on the issue of whether the delays were attributable to Chaney or the plans. The instructions given to the jury made it clear that the claim asserted against Tucson was for breach of contract and a verdict was returned in favor of Chaney in the amount of $67,790.07.

The court of appeals reversed based on the trial court's alleged error in refusing to grant Tucson's motion for mistrial. We disagree with the appeals court opinion and vacate *Chaney Building Co. v. City of Tucson,* 148 Ariz. 583, 716 P.2d 40 (App. 1985). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ. App.P. 23.

The issue before this Court is whether Kulseth's valid dismissal with prejudice can be given collateral estoppel effect to bar litigation on the breach of contract claim between Chaney and Tucson. We hold it can not.

 Under the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed.2d 1122 (1955); *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.,* 26 Ariz.App. 204, 206, 547 P.2d 56, 58 (1976). Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment. *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp., supra,* 26 Ariz.App. at 209, 547 P.2d at 61; *Moore Drug Co. v. Schaneman,* 10 Ariz.App. 587, 589, 461 P.2d 95, 97 (1969); Restatement (Second) of Judgments § 27.

 When an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated. Restatement (Second) of Judgments § 27 comment d. However, in the case of a judgment entered by confession, consent or default, none of the issues is actually litigated. *Id.,* comment e. A judgment entered by stipulation is called a consent judgment, *Cochise Hotels v. Douglas Hotel Operating Co.,* 83 Ariz. 40, 47, 316 P.2d 290, 295 (1957), and may be conclusive, with respect to one or more issues, if the parties have entered an agreement manifesting such intention. § 27 comment e. Because the issues involved in the Kulseth dispute were never actually litigated, one of the prerequisites to giving a judgment collateral estoppel effect is patently absent. Nothing is adjudicated between parties to a stipulated dismissal. *See* James, "Consent Judgments as Collateral Estoppel," 108 U.Pa.L.Rev. 173, 192 (1959) (a consent judgment involves neither a finding nor a concession that either party has been negligent or free from negligence).

 Tucson could have possibly raised the doctrine of collateral estoppel had there been any litigation of issues between Chaney and Kulseth. *Standage Ventures, Inc. v. State,* 114 Ariz. 480, 562 P.2d 360 (1977); *Spettigue v. Mahoney,* 8 Ariz.App. 281, 445 P.2d 557 (1968). There was nothing in the dismissal which indicated the parties agreed that anything should be deemed conclusively established for the Chaney-Tucson litigation. If the parties to this action had intended the Kulseth dismissal to be binding as to certain factual issues, and if their intention was reflected in the dismissal, we would enforce the intent of the parties and collateral estoppel would apply. *See James, supra* at 180.

 We would agree with the appeals court result if Tucson's liability were solely derivative from that of Kulseth. In that situation a dismissal of Kulseth would prohibit an action against Tucson. If this were a case of *respondeat superior* and the only party left in the suit were the

master, we would agree with Tucson's position because an act of a servant done in the course of his employment is legally the act of the master. *Driscoll v. Harmon,* 124 Ariz. 15, 601 P.2d 1051 (1979); *Larsen v. Arizona Brewing Co.,* 84 Ariz. 191, 325 P.2d 829 (1958). In cases of derivative liability, a judgment or dismissal in favor of the servant relieves the master of liability. *Torres v. Kennecott Copper Corporation,* 15 Ariz.App. 272, 274, 488 P.2d 477, 479 (1971).

In the current action Tucson was sued for wrongful termination and breach of contract; Kulseth for negligence. We do not believe this was a case where Tucson's liability was simply derivative from any liability of Kulseth. *Cf. Industrial Park Corp. v. U.S.I.F. Palo Verde Corp., supra* (multiple corporate defendants were so closely related to principal corporate defendant that their liability was derivative of that of principal); *Torres v. Kennecott Copper Corporation, supra* (master-servant relationship). Clearly the law allowed Chaney to assert a cause of action against Kulseth for negligence. *Donnelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984).

In *Donnelly,* we recognized that design professionals, such as architects, have a duty to use ordinary skill, care and diligence in rendering their professional services and must use their skill, care and diligence to provide sufficient and adequate plans. 139 Ariz. at 187, 677 P.2d at 1295. An architect's work can be inaccurate or imperfect without being an actionable deviation from the standards of care observed by design professionals. *See* The American Bar Association, *Seven Steps to Resolving Construction Contract Claims,* p. 3.7 (1983) ("The architect's undertaking, in the absence of a special agreement does not imply or guarantee a perfect plan or satisfactory result"). From a review of the record, we believe Chaney was entitled to produce evidence and did produce evidence which showed the delays in its performance could have been caused by the plans and not by Chaney without Kulseth necessarily being negligent as a result.

A principle in construction law is that the owner (Tucson) impliedly warrants the adequacy of the plans and specifications supplied by the owner which he requires the contractor to follow. Thomas C. Horne, *Arizona Construction Law,* § 107, at 39 (State Bar of Arizona 1978); The American Bar Association, *Construction Contract Claims,* 117–118 (1978); The American Bar Association, *Seven Steps to Resolving Construction Contract Claims,* 3.17; 6 Corbin, *Contracts,* § 1338, at p. 349. A contractor is also not liable for damages which are the direct result of defective plans and specifications furnished by the owner. *Kubby v. Crescent Steel,* 105 Ariz. 459, 466 P.2d 753 (1970), *Horne, supra. See also United States v. Spearin,* 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918) ("... if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications").

The evidence objected to by Tucson was used by Chaney to demonstrate that it was unable to perform in a timely manner in accordance with the contract due to inadequate plans. When Tucson terminated its contract, Chaney claimed it had substantially performed and the delays in completing the project were beyond its control. Chaney was entitled to seek the balance due under the contract on a breach of contract theory. The jury, as the finder of fact, decided that the delays were excusable on Chaney's part and that Tucson did breach its contract with Chaney. We will not disturb this result. The opinion of the court of appeals is vacated and the judgment of the trial court affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.