235 P.3d 265

Randy E. ROBERTS, a single man, Plaintiff/Appellee/Cross–Appellant,

v.

CITY OF PHOENIX, a municipal entity; Michael and Shirl Rogers, husband and wife; William E. Niles, Jr., Defendants/Appellants/Cross–Appellees.

No. 1 CA–CV 09–0283.

Court of Appeals of Arizona, Division 1, Department C.

July 1, 2010.

Kent & Ryan, P.L.C. By Michael S. Ryan and Candace H. Kent, Phoenix, Attorneys for Plaintiff/Appellee/Cross–Appellant.

Sanders & Parks, P.C. By J. Arthur Eaves, Phoenix, Attorneys for Defendants/Appellants/Cross–Appellees.

## OPINION

BROWN, Judge.

¶ 1 The City of Phoenix ("City") appeals the trial court's order striking its answer and

the resulting default judgment entered against the City as a sanction for discovery violations. The City also challenges the amounts awarded for damages and attorneys' fees. Randy E. Roberts cross-appeals from the judgment, asserting the court erred in failing to award the full amounts of the damages and attorneys' fees he requested. Roberts also challenges the denial of his request to hold the City's legal counsel jointly liable for attorneys' fees. For the following reasons, we affirm.

## BACKGROUND

¶ 2 In March 2001, Phoenix police officer Michael Rogers stopped Roberts, who was allegedly exceeding the speed limit, moments after Roberts left "Charlie's," a well-known gay bar in Phoenix. Rogers later claimed that during the stop Roberts disobeyed police orders and was uncooperative. Roberts contended he was not speeding and that Rogers refused to tell him why he had been pulled over. He also claimed Rogers was aggressive, pounded on the car windows with a flashlight, and threatened to pull him out of the car window. Additional officers arrived on the scene in response to Rogers' request for backup and Roberts was arrested for failure to comply with the lawful order of a police officer.

¶ 3 All charges against Roberts were eventually dismissed. Roberts then sued Rogers and the City in March 2002 for violations of his civil rights pursuant to 42 U.S.C. § 1983 (2006), alleging selective enforcement of the law, assault, failure to supervise, and malicious prosecution. Roberts claimed in part that the City knew or should have known that Rogers and other Phoenix police officers were engaged in the practice of targeting persons leaving gay bars under the ruse of conducting routine traffic stops.

¶ 4 In preparation for trial, Roberts requested production of Rogers' personnel records, including disciplinary records, and asserted such information would reveal a pattern of discrimination against gay persons. The City refused to turn over the records, claiming they were irrelevant to Roberts' claims. He disagreed and filed a motion to compel. The City sought *in cam-*

*era* review of Rogers' personnel records, after which the trial court determined the records were irrelevant.

¶ 5 Trial before a jury commenced in February 2004. At the close of Roberts' evidence, the City moved for judgment as a matter of law regarding Roberts' § 1983 claims. The court granted the motion, finding no general policy relating to "deliberate indifference on the part of the City" or denying the "citizens their constitutional rights." Roberts then agreed to dismiss the remaining claims, with each party to pay their own expenses except that Roberts agreed to pay jury fees.

¶ 6 In August 2004, Roberts filed a motion for relief from the judgment pursuant to Arizona Rule of Civil Procedure 60(c) based on newly discovered documents which predated Roberts' trial but had not been disclosed by the City. In the motion, Roberts explained that through his counsel's efforts he had obtained specific information relating to Rogers' personnel file. The documents included two citizen complaints of anti-gay bias filed against Rogers asserting he targeted individuals leaving gay bars for traffic stops; one was filed in 2001 and the other in 2003. The City opposed Roberts' motion, arguing he was attempting to circumvent the trial court's determination that the documents produced for *in camera* inspection were not discoverable. The City also moved to enforce the parties' settlement agreement. After review of the previously undisclosed documents, the court granted Roberts' motion for relief from the judgment and denied the City's motion to enforce.

¶ 7 The City appealed to this court, and we affirmed the trial court's order granting Rule 60(c) relief. *Roberts v. City of Phoenix,* 1 CA–CV 04–0765 (Ariz.App. Jan. 19, 2006) (mem. decision). We found that the documents the City provided for *in camera* inspection, together with the undisclosed 2001 and 2003 complaints, could be relevant to establish selective enforcement and to show the City had a "policy" of failing to appropriately discipline officers. We further held that the City's failure to produce the 2001 and 2003 complaints for *in camera* inspection

was clear and convincing evidence of misconduct on the part of the City.

¶ 8 In May 2006, in preparation for a pretrial scheduling conference, Roberts submitted a memorandum alerting the court that production of Rogers' entire personnel file was necessary to allow him to conduct meaningful depositions. The City countered it was not required to produce documents the trial court had previously determined were not discoverable. In addition, the City asserted Roberts' request was premature prior to the trial court determining what issues were pending for litigation. In response, at the next scheduling conference, the trial court ordered the City to produce, within three days, "all files maintained by the City of Phoenix regarding Mr. Rogers." The court further ordered the City to create a list of all such files not in the possession of City's counsel at that time and the date the information would be produced. Additionally, the court ordered that no redactions be made to the files and that the parties submit a confidentiality agreement.

¶ 9 Three days later, the City filed a notice of production with the court stating that, "pursuant to the court's order at the status conference on May 16, 2006," it had produced the Personnel and Professional Standards Bureau files pertaining to Rogers in redacted form. The City indicated it had requested "unredacted" copies of the files from the police department and "if so ordered by the court, [would] produce those files when they are received." In July 2006, following a court order reaffirming the prior requirement that the City produce unredacted versions of all files on Rogers, the City augmented its disclosure by providing an updated Personnel File (Fiscal Management Bureau File) and Professional Standards Bureau File, as well as records from Rogers' Division File, City of Phoenix File, and Training File. The City again stated that such documents were "pursuant to the court's order" requiring production of "all" of Rogers' file information.

¶ 10 By June 2007, Roberts' counsel had learned a number of documents and reports had not been provided by the City in its previous disclosures despite the requirement that everything be produced. He also learned that documents from Rogers' file had been purged during the pendency of the litigation notwithstanding the court's order to disclose all records to Roberts.[1] Roberts sought sanctions against the City and its counsel for these discovery violations. During the August 2007 oral argument on Roberts' motion for sanctions, the trial judge expressed her displeasure with the manner in which discovery had proceeded. Addressing the City's counsel, she stated, "I'm very troubled by the fact that documents are not being produced. I'm very troubled by the fact that the only time documents are being produced is when [Roberts' counsel] seems to find out about them and brings them to [the City's] attention." Following oral argument, the judge further admonished the City for its failure to disclose all of Rogers' information, particularly in light of her prior order requiring such disclosure, stating "we've gone around and around about producing documents[,]" "I'm not playing games[.]"

¶ 11 The trial judge then ordered the City to "identify any and all documentation regarding Officer Rogers that ha[d] been purged from his file, *from the inception of this lawsuit.*" (Emphasis in original.) It also ordered the City to produce "any documents regarding Officer Rogers that are currently being generated, without regard to the significance of the subject matter, . . . forthwith." The court specifically commented that "[s]hould [it] be apprised that specific documents were not produced that [predate the] hearing, the Court will strongly consider imposing serious sanctions and striking [City's] Answer as a [s]anction."[2]

---

1. Roberts alleged that nine disclosures by the City did not include the relevant underlying reports, interviews, and tapes that should have been attached. He also alleged fifteen additional incidents of missing or misstated information as well as multiple instances of purging documents by both the City and Rogers from Rogers' files during the litigation.

2. The judge further cautioned the City as follows:

   I'm also going to [ ] keep you under a continuing obligation to produce. And . . . I don't care what it pertains to—if it's he didn't put the kickstand down on his motorcycle—I don't care what it is, you better produce it to the other side. And . . . in the future if it ends up

In response, counsel for the City again represented that the "Phoenix Police Department, according to what's been told to me, has conducted a diligent inspection of their records and we have disclosed everything."

¶ 12 Four days later, the City filed a notice of compliance accompanied by an affidavit of Lieutenant Johnston, head of the Law Specialist Bureau, the department that responds to records requests, avowing that "the City of Phoenix had located and produced the complete records . . . of Officer Michael T. Rogers." Johnston further avowed that any documentation that "may have been purged since the implementation of this civil action had been previously provided" to the City's counsel prior to the purge occurring, with the exception of interview tapes or photographs as they were not asked for or produced. Despite this affirmation, and less than one week after the City's notice of compliance, the City produced four audiotapes and a CD/cassette tape from investigations conducted on Rogers in 2003 and 2006 that had not previously been produced. In a subsequent notice of correction, the City asserted that notwithstanding its prior avowal that all information regarding Rogers had been turned over, its "counsel ha[d] subsequently learned that the Phoenix Police Department had maintained audiotapes of investigations which involved Officer Rogers, which had not been located or produced as of [the hearing regarding sanctions]."

¶ 13 Shortly thereafter, Roberts filed a motion to reconsider sanctions based on continued nondisclosure. In addition to the tapes identified in the City's notice of correction, Roberts asserted the City had also failed to abide by the court's order to identify the documents that had been purged from Rogers' file and had failed to produce the internal memoranda regarding those purges. In response, the City explained that these additional omissions stemmed from an "inadequate internal system for responding to the rigors of the discovery process" and departmental "confusion relating to document re-

quests from Legal Affairs to the Professional Standards Bureau." The City further asserted the nondisclosure was not the result of any willful or bad faith attempt to conceal discoverable materials. Thus, the City asked the court to refrain from imposing the ultimate sanction of striking the City's answer.

¶ 14 In November 2007, before the court ruled on Roberts' motion to reconsider sanctions, the City notified the court and Roberts that Rogers had been severely injured in a motorcycle accident on October 9, 2007, rendering him unable to participate in his defense or in preparations for the upcoming trial. Roberts contested the characterization of Rogers' accident, noting that through independent investigation Roberts' counsel had learned that Rogers' accident was the result of Rogers operating a motorcycle while intoxicated and colliding with a properly parked vehicle, causing serious injuries to himself and his passenger. According to an incident report prepared by the Glendale Police Department, the investigating officer informed the county attorney's office that he was investigating the matter as an aggravated assault.

¶ 15 Also in November 2007, Roberts filed a supplement to his motion for reconsideration of sanctions asserting additional nondisclosures. He first claimed the City had failed to disclose required information regarding Rogers' supervisor, Sergeant William Niles. Specifically, he alleged the City failed to produce relevant reports regarding Sergeant Niles' alleged failure to supervise, improper bookings, unprofessional conduct, improper comments, and use of excessive force. He further contended the City failed to disclose any information regarding Rogers' motorcycle accident from the previous month.

¶ 16 In December 2007, the City responded to Roberts' supplement, arguing it had complied with its obligations because it produced Sergeant Niles' "personnel file." The City also claimed no other information regarding

only getting produced because [counsel for Roberts] finds out about it and asks for it, there will be serious sanctions. So you better just red flag this file and make sure any document that's created by the City of Phoenix or

City of Phoenix Police Department that pertains to this officer gets copied and sent over to [counsel for Roberts] within hours of being generated.

Niles should be disclosed because "Phoenix Police Officers are entitled to confidentiality regarding the documents contained in the files of the Professional Standards Bureau." The City further asserted it had not produced information regarding Rogers' accident because that incident remained under criminal investigation.

¶ 17 Roberts countered that the request for production regarding Sergeant Niles' records was not limited to his "personnel file"; rather, it sought "all documents regarding the disciplinary record of City of Phoenix Police Department employee [Sergeant] William Niles, especially any formal disciplinary actions taken for 'failure to supervise.' " He also claimed that although Rogers' accident investigation had been completed and referred for felony prosecution more than two months prior, the City had not provided Roberts with any documentation even though the court's previous order required the City to disclose every document relating to Rogers within thirty days of its creation.

¶ 18 Following oral argument on the motion for reconsideration of sanctions, the trial court noted multiple "instances where documents that predated have now been produced that were not previously produced ... instances where documents [ ] exist that have not been produced ... and [Roberts' counsel] ... told you these documents existed and they still hadn't been produced." The court reiterated its prior warnings to the City regarding the need for timely disclosure of information and reminded the City that its representatives were present at the August 2007 hearing and avowed to the court that everything had been produced. Ultimately the court concluded that there were "clear grounds to impose the sanction" of striking the answer, noting that "the gamesmanship in this case from the City of Phoenix's standpoint has been deplorable[.]" The court then struck the City's answer, informing counsel for the City that he could request an evidentiary hearing "on this issue" if he wished to present additional matters not previously addressed in the pleadings. After requesting the opportunity to confer with his client, counsel for the City requested an evidentiary hearing.

¶ 19 The day before the hearing, Roberts filed an additional memorandum informing the court that he had learned that day of yet more documents regarding Rogers that had not been produced by the City. Specifically, Roberts' counsel became aware of a series of interdepartmental emails regarding Rogers, a recent employee evaluation, and an additional internal investigation of Rogers relating to assaultive behavior toward a citizen.

¶ 20 At the evidentiary hearing, the City defended its claims of compliance and offered the testimony of two police department employees who testified regarding the City's document production process. Lieutenant Johnston testified that the City keeps six different files for police officers as well as a file maintained by the officer's supervisor. When records are needed from any of these files, the City merely "send[s] out the request to the particular custodian of records and trust[s] that they [will] send [ ] everything that [was] requested." Johnston also testified that after learning materials were missing from the City's document production, he "believe[d] somebody was tasked with ... try[ing] to get them" and that the omission likely occurred because the request was "not communicated appropriately" resulting in an employee "oversight." He further stated that although he was aware of the order requiring production of a list of all purged documents relating to Rogers, he did not produce one because as far as he was aware "the City of Phoenix [does not] maintain [such] a list."

¶ 21 Sergeant Kortes, who oversees the police department's incident review unit, testified repeatedly that if a document had been requested in discovery it had been produced. But when asked by the court if she was aware that during a civil suit the City has an obligation to produce documents regardless of whether they are requested, she answered "I am now." She further testified that although she was aware of the lawsuit and participated in collecting documents for discovery since 2005, she did not become aware of the requirement to affirmatively turn over documents until 2007.

¶ 22 At the conclusion of the hearing, the court left the sanction in place, noting that

"the City of Phoenix has repeatedly and continuously violated its discovery obligations in this case by failing to produce documents that were responsive to outstanding discovery requests and/or should have been produced pursuant to Rule 26.1, [of the Arizona Rules of Civil Procedure]." The court further found that "the City's failure to timely produce these documents was intentional, in bad faith, and an obstruction of discovery" and therefore it "[could] not think of a more appropriate case than this one for this sanction."

¶ 23 Subsequent to the court's order to strike the City's answer, the parties agreed to brief whether Roberts was entitled to attorneys' fees. Following an evidentiary hearing on damages and subsequent pleadings by the parties, the court awarded Roberts $10,000 for pain, suffering, humiliation, and mental anguish; $2,500 for attorneys' fees Roberts had paid to former counsel in defense of the 2001 criminal charge, plus prejudgment interest; $268,450 as reasonable attorneys' fees paid to counsel for this litigation; $12,729.17 in non-taxable costs; and $4,832.05 in taxable costs. The City timely appealed and Roberts cross-appealed.

## DISCUSSION

■■■ ¶ 24 We will affirm a trial court's imposition of sanctions for discovery violations, including entry of default judgment, unless the record reflects a clear abuse of discretion. *See Rivers v. Solley,* 217 Ariz. 528, 530, ¶ 11, 177 P.3d 270, 272 (App.2008) (citing *Wayne Cook Enters., Inc. v. Fain Prop. Ltd. P'ship,* 196 Ariz. 146, 147, ¶ 5, 993 P.2d 1110, 1111 (App.1999)). We defer to the court's explicit or implicit factual findings and will affirm as long as such findings are supported by reasonable evidence. *See Stoddard v. Donahoe,* 224 Ariz. 152, 154–55, ¶ 9, 228 P.3d 144, 146–47 (App.2010).

### I. Striking the City's Answer/Entry of Default Judgment

¶ 25 The City first argues that the entry of default judgment was an abuse of the trial court's discretion because Roberts was not prejudiced by the discovery violations the court found the City had committed. The City asserts that entering default judgment as a sanction for discovery violations can only be justified if there was prejudice to the opposing party. *See Zimmerman v. Shakman,* 204 Ariz. 231, 235, ¶ 14, 62 P.3d 976, 980 (App.2003). Because discovery and disclosures were ongoing and because a trial date had been set only three days prior, the City argues that Roberts suffered no prejudice. It also contends that Roberts had a fair opportunity to incorporate the disclosed information into his trial presentation and thus any possible prejudice could have been avoided. We disagree.

¶ 26 Pursuant to Rule 37(b) of the Arizona Rules of Civil Procedure,

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . .
>
> (C) An order striking out pleadings ... or rendering a judgment by default against the disobedient party[.]

Ariz. R. Civ. P. 37(b)(2)(C). Further, a party who fails to timely disclose information required by Rule 26.1, unless such failure is harmless, is subject to sanctions, including striking the pleadings and entry of a default judgment. Ariz. R. Civ. P. 37(c)(1).

■■■ ¶ 27 Although striking pleadings and entering default for discovery violations is within the trial court's discretion, when a court enters such an order its discretion "is more limited than when it employs lesser sanctions." *Rivers,* 217 Ariz. at 530, ¶ 11, 177 P.3d at 272 (internal quotation marks and citation omitted). Nonetheless, a willful disregard of discovery obligations, bad faith, or other fault by a party may form a valid basis for striking pleadings or entering default judgment. *See Poleo v. Grandview Equities, Ltd.,* 143 Ariz. 130, 133, 692 P.2d 309, 312 (App.1984) (finding a willful and bad faith failure to produce sufficient to impose a default judgment pursuant to Rule 37(b)(2)(C)); *cf. Birds Int'l Corp. v. Ariz. Maint. Co., Inc.,* 135 Ariz. 545, 547–48, 662 P.2d 1052, 1054–55 (App.1983). Intentional destruction of evidence may likewise provide an appro-

priate basis for such sanctions in some cases. *See Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 251, 955 P.2d 3, 7 (App.1997) (citing *GNLV Corp. v. Serv. Control Corp.*, 111 Nev. 866, 900 P.2d 323, 325 (1995) (recognizing that dismissal of a case for discovery violations such as destruction of evidence may be used in extreme situations)). When abuses of discovery or disclosure obligations are found to warrant the imposition of sanctions, those sanctions must be appropriate to the circumstances and must be preceded by due process. *See Zimmerman*, 204 Ariz. at 235, ¶ 13, 62 P.3d at 980.

¶ 28 The record before us supports the trial court's conclusion that the discovery violations committed by the City were made in bad faith and for the purpose of obstructing discovery. At the outset of this litigation, the City withheld the 2001 and 2003 citizen complaints against Rogers. Even after this court found such nondisclosure constituted misconduct, the City continued its practice of selectively limiting its disclosure of documents in violation of its obligations under the rules of civil procedure and specific court orders. In response to the court's order to produce "all files maintained by the City of Phoenix regarding Mr. Rogers" with "no redactions," the City produced only Rogers' "personnel records," in redacted form. Only after the court again confirmed its previous ruling that all records be produced did the City then augment its disclosure with additional records from Rogers' Professional Standards Bureau File, Division File, City of Phoenix File, and Training File; again claiming to have provided "all" of Rogers' file information.

¶ 29 The pattern continued when Roberts' counsel learned multiple records were missing from the City's production and other records had been destroyed during the pendency of the litigation. As a result, the trial court ordered the City to disclose any and all documents generated pertaining to Rogers regardless of their significance and to identify all documents that had been purged regarding Rogers. After the City's representatives avowed again that all documents had been located and produced, it was revealed that additional documents that predated the

order had not been produced. Further, the City never identified what documents had been purged and no internal communications regarding those purges were provided. Even after stern admonitions from the trial judge and a warning that severe sanctions would be considered for further discovery infractions, including striking the answer, the City continued to withhold information. On appeal, Roberts identifies at least eighteen documents that were never produced throughout the pendency of the litigation despite repeated requests, including records regarding Rogers' supervisor, Sergeant Niles, which were produced only in part; reports regarding Rogers' employee evaluations; internal email communications about Rogers following his motorcycle accident; and investigative reports relating to the accident. The City does not controvert Roberts' assertion that these documents were not produced.

¶ 30 Moreover, records from Rogers' file were purged on multiple occasions throughout the pending litigation, both by the Phoenix Police Department and by Rogers himself. The court found it "troubling ... that documents pertinent to Officer Rogers have been and are presently being purged while this matter is currently in litigation" and that documents were also "being purged by the City of Phoenix between August of 2004 and apparently January or February of 2007, even though this case [was] up on appeal during that time period." The court further noted:

> We've had multiple-multiple-motions to compel. Document production has been an issue in this case since the inception of this case. The City was chastised by the Court of Appeals. They found misconduct in the City not producing documents previously that clearly should have been produced even [without] a request for production because they could lead to discovery of admissible evidence by the Court of Appeals' own conclusion.

> We come back here and I find out documents are being purged by the City of Phoenix between August of 2004 and apparently January or February of 2007, even though this case is up on appeal

during that time period, or at least a substantial portion of that time period.

. . .

[The court has] people coming in here ... and avowing to me that documents have been produced, everything's been produced. A week later ... I get [ ] pleadings saying that was erroneous. All these documents are being found, but there's never any explanation as—to the Court—as to why these weren't produced originally. No suggestion that they were misfiled. No suggestion that they fell behind the filing cabinet[.] No suggestion that would lead this court to conclude that the failure to produce them was anything other than intentional.

■ ¶ 31 When considering the imposition of default judgment as a sanction for discovery violations, a court must find the party itself is at fault and it must consider and reject lesser sanctions. *Wayne Cook*, 196 Ariz. at 149, ¶ 12, 993 P.2d at 1113. The trial court here specifically found the City to be at fault for these discovery violations, stating "[the misconduct] is attributable to [the City]" and "[it] has purposefully stonewalled this case by refusing to produce documents and by not producing documents until [opposing counsel] finds that ... these documents exist." It also considered lesser sanctions as evidenced by its initial refusal to strike the City's answer when it instead ordered all documents regarding Rogers be produced regardless of significance, within thirty days of creation. Only after repeatedly ordering compliance with discovery obligations and finding that "[t]he City ignored [the] Court's Order to produce any documents regarding Officer Rogers, contemporaneous with their creation" and "on numerous occasions, documents were only produced by the City after [Roberts] provided irrefutable proof that such documents existed" did the court find that extreme sanctions were appropriate. *See Souza*, 191 Ariz. at 250, 955 P.2d at 6 (noting that sanctions for destruction of evidence are best decided on a case by

case basis by a trial court, considering all relevant factors).

¶ 32 In sum, the trial court considered the history of the case and the specific instances of discovery violations, as well as possible lesser sanctions, in determining that striking the City's Answer was the appropriate sanction. Based on our review of the record, we find reasonable grounds supporting the court's decision.

## II. Attorneys' Fees and Costs

■ ¶ 33 The City argues the trial court committed reversible error in awarding attorneys' fees to Roberts pursuant to 42 U.S.C. § 1988 (2006) [3] because Roberts did not succeed on the merits or obtain a sufficient degree of success on his claims to justify a fee award. The City further contends that even when a party technically prevails on a § 1983 claim no attorneys' fees should be awarded when the party seeking fees received nothing more than minimal damages.

■ ¶ 34 As an initial matter, we note that the court found Roberts "entitled to an award of attorneys' fees [ ] pursuant to 42 U.S.C. § 1988 and/or Rule 37(c)[,]" and thus did not make the award of fees solely under § 1988.[4] The City makes much of the fact that the trial court later quoted from a federal civil rights case in explaining its decision to use the "lodestar" method to calculate reasonable fees, as would be customary in making an attorneys' fee award under § 1988. *See Agster v. Maricopa County*, 486 F.Supp.2d 1005, 1010 (D.Ariz.2007). However, the City has cited no authority, and our research has revealed none, limiting the use of this method of fee calculation to § 1988 awards. Whether the court awards attorneys' fees under § 1988 or as a sanction under Rule 37, the decision to make such an award, as well as the method of calculation, is left to the sound discretion of the trial court and we will not disturb that decision absent a

---

3. 42 U.S.C. § 1988(b) permits attorneys' fees to be awarded to the "prevailing party" in a § 1983 claim at the discretion of the court.

4. Roberts sought attorneys' fees pursuant to 42 U.S.C. § 1988, Rule 37(c), and Rule 11. In response, the City denied the applicability of Rule 37(c) and addressed only § 1988 attorneys' fees.

clear abuse of discretion. *See Cummings v. Connell*, 402 F.3d 936, 946 (9th Cir.2005) (recognizing that a trial court has the authority to award reasonable attorneys' fees to the party who prevails in a § 1983 claim); *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 505, ¶ 111, 200 P.3d 977, 1002 (App.2008) (stating that an appellate court will not disturb a trial court's decision to award sanctions resulting from disclosure violations absent an abuse of discretion). Here, the trial court expressly stated that Roberts was "entitled to attorneys' fees [ ] pursuant to 42 U.S.C. § 1988 and/or Rule 37(c)[.]" The fact that it used the lodestar method to calculate those fees has no bearing on the underlying basis for the award. Further, nothing in the final judgment indicated any intent on the part of the trial court to modify its previous ruling and award fees only on 42 U.S.C. § 1988 grounds.

### A. Attorneys' Fees Pursuant to 42 U.S.C. § 1988

¶ 35 The City argues that a default judgment is not a decision "on the merits" of the case and therefore an award of attorneys' fees is inappropriate under § 1988. It cites *Chaney Bldg. Co. v. City of Tucson* to support its contention that "a judgment entered by confession, consent or default [is not] actually litigated" and thus not a decision on the merits. 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). We find the City's reliance on *Chaney* misplaced.

¶ 36 *Chaney* involved the stipulated dismissal of a party in a contract dispute and whether such a dismissal could be given collateral estoppel effect to bar future litigation. *Id.* at 573, 716 P.2d at 30. The *Chaney* court held that future litigation could not be barred because judgments entered by stipulation,

i.e., consent judgments, involve issues that have never been litigated and thus were not decided on the merits. *Id.* But the case before us does not involve a stipulated dismissal or consent judgment. Instead, the default judgment here was entered as a sanction for discovery violations that were repeatedly before the trial court and addressed throughout the proceedings. Thus, *Chaney* does not control here.

¶ 37 "A final judgment or decree decides and disposes of the cause on its merits leaving no question open for judicial determination." *Decker v. City of Tucson*, 4 Ariz.App. 270, 272, 419 P.2d 400, 402 (1966) (citation omitted). Here, striking the answer led to the default judgment. The City contested the amount of damages and a hearing was held, leading to a final judgment on those damages. We therefore find that the judgment was a decision on the merits.

¶ 38 The City further asserts that regardless of whether the judgment constitutes a determination on the merits, Roberts did not "prevail" in the sense necessary to justify an award of attorneys' fees because he received only minimal damages. Relying on cases that discuss "nominal" [5] damage awards, the City argues that the amount of fees cannot be justified as reasonable because they are disproportional to the amount of the damages. *See Cummings*, 402 F.3d at 946–47; *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 809–10 (9th Cir.1994) (citing *Farrar v. Hobby*, 506 U.S. at 115–16, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). We disagree.

¶ 39 Roberts was arrested and spent approximately six hours in jail, but otherwise was not physically harmed. Nonetheless, he

---

5. The City conflates "minimal" damages with "nominal" damages. The term "minimal," in relation to legal damages, is not a term of art; rather, minimal means only "of a minimum amount, quantity, or degree[.]" The New Oxford American Dictionary 1079 (2d ed. 2005). "Nominal" damages, on the other hand, is a term of art and is used to denote a damage award that does not compensate for loss or harm but rather is "awarded to vindicate rights, the infringement of which has not caused actual, provable injury." *Cummings v. Connell*, 402 F.3d 936, 942 (9th

Cir.2005). Nominal damages are customarily awarded as a mere token or "trifling." *Id.* at 943. Although they are not always limited to an award of one dollar, a similarly miniscule amount is compelled by definition. *See id.* The City concedes the damage award to Roberts was not nominal. Even if the award was nominal, however, the United States Supreme Court has recognized that "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

was awarded "$10,000 as and for his loss of liberty, and the pain, suffering, humiliation and mental anguish he experienced as a result of the malicious and unlawful detention" by the City. He then spent the next eight years pursuing this claim against the City, all the while encountering discovery violations that stymied his litigation efforts, incurring substantial amounts of unnecessary legal fees along the way. We concur with the trial court's reasoning on this point:

> [I]t [is] ironic that the City contests the reasonableness of the hours [Roberts'] attorneys spent on this matter. In essence, the City is contesting the reasonableness of hours that the City forced [Roberts'] attorneys to incur due to the unreasonableness of the City's conduct in this matter.

Moreover, because we have already found that attorneys' fees were awarded under both § 1988 and Rule 37(c), any arguments by the City that rely solely on reasonable proportionality for awards made under § 1988 are not controlling. Accordingly, we find no abuse of discretion in the trial court's decision to award fees or in its method of fee calculation.

### III. Damages Award

¶ 40 On cross-appeal, Roberts argues he is entitled to the full amount of damages he requested because the City offered no evidence to refute his claim. We disagree.

¶ 41 The appropriate amount of damages in a case of intangible harm lies within the discretion of the trial court. *See Daou v. Harris,* 139 Ariz. 353, 361, 678 P.2d 934, 942 (1984) (recognizing that the trial court shall determine special damages as it deems just and reasonable before entering default judgment). "If the verdict is supported by adequate evidence, it will not be disturbed, and the greatest possible discretion is in the hands of the trial judge." *Creamer v. Troiano,* 108 Ariz. 573, 577, 503 P.2d 794, 798 (1972).

¶ 42 The trial court conducted an evidentiary hearing on the issue of damages. Roberts offered testimony regarding his encounter with Rogers the night of the incident; he described his emotional state and the concern

he had for his safety. On cross-examination, the City elicited testimony from Roberts indicating that he had not experienced any physical injury, he had initially refused to follow Rogers' commands, and he declined to agree to defuse the situation when Rogers offered to "start over." Roberts also admitted that his encounter with Rogers lasted no longer than twelve minutes.

¶ 43 In addition to attorneys' fees, Roberts requested $50,000 in compensation for pain and suffering over the course of the litigation. The City argued damages should be limited to attorneys' fees for the criminal portion of the case prior to the initial dismissal and the value of one night spent in jail—a figure it estimated to be "something below $10,000."

¶ 44 Following the presentation of evidence, the court commented that it understood what Roberts claimed caused his emotional distress and had to "decide whether there was emotional distress and trauma; and if so, what [it] should [ ] award him for that emotional distress and trauma." The court ultimately awarded Roberts $10,000 for pain, suffering, humiliation, mental anguish, and loss of liberty. On these facts, we find no abuse of discretion, as reasonable evidence supports the damages award.

### IV. Joint and Several Liability/Rule 11 Sanctions

¶ 45 Roberts argues that attorneys' fees should have been awarded against defense counsel jointly and severally under Rule 11 for misconduct during proceedings. We review all aspects of orders imposing Rule 11 sanctions for an abuse of discretion. *James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Prot.,* 177 Ariz. 316, 318–19, 868 P.2d 329, 331–32 (App.1993).

¶ 46 Roberts requested Rule 11 sanctions on multiple occasions during the proceedings, including in his original motion for attorneys' fees, his reply to the City on the same matter, and in a separate motion to strike the City's objection to Roberts' fee application. Notwithstanding Roberts' repeated requests to the trial court to impose such sanctions, the court declined to do so. Although Rob-

erts points to a host of acts on the part of defense counsel which he contends merit the imposition of such sanctions, we cannot say that the court abused its discretion in declining Roberts' request. The court placed the responsibility for the discovery infractions and other misconduct on the City, not on defense counsel. During oral argument on the matter of sanctions the court stated that it was "not necessarily of the opinion that any of this conduct [was] attributable to [defense counsel]" but instead found it "attributable to [the City]." Thus, the trial court acted within its discretion in declining to impose Rule 11 sanctions against the City's counsel.

### V. Amount of Attorneys' Fees Award

¶ 47 Roberts challenges the trial court's decision to award him less than the full amount of attorneys' fees he requested. "The determination of whether the amount of attorney[s'] fees is reasonable is a matter peculiarly within the discretion of a trial court, and will not be disturbed absent a showing of abuse of that discretion." *Harris v. Reserve Life Ins. Co.*, 158 Ariz. 380, 384, 762 P.2d 1334, 1338 (App.1988) (internal citation omitted).

¶ 48 Roberts requested $329,948.50 in fees for 938.5 hours of attorney time and 42.1 hours of staff time. The City countered that no fees should be awarded; and alternatively, such fees should be limited to approximately 200 hours of attorney time at a rate of $125–$155 per hour. The court concluded that Roberts was entitled to $268,450 based on 797 billed hours of attorney time. The court expressly considered the hours expended in pursuing and prevailing on the claims in determining the number of hours reasonably incurred and a reasonable hourly rate. The court further reviewed other relevant factors in making such a determination and concluded that no adjustment in its final determination was appropriate. The court also reviewed Roberts' submission of staff time and declined to award any amount for those hours because there was "no explanation as to who these 'staff' persons [were], e.g., secretaries, paralegals, documents clerks etc." leaving the court no way to determine "a reasonable hourly rate for such

persons." On this record, we cannot say the trial court abused its discretion in declining to award Roberts all of his requested attorneys' fees.

### VI. Attorneys' Fees on Appeal

¶ 49 Roberts has requested an award of attorneys' fees on appeal. He failed, however, to specify the legal basis for such an award, which compels us to deny his request, particularly in a case such as this involving multiple grounds upon which an award could be granted and different legal standards for evaluating the award. Thus, we deny Roberts' request for attorneys' fees. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 537, ¶ 28, 169 P.3d 120, 127 (App. 2007) (denying request for fees on appeal for failure to provide supporting authority); *Kelly v. NationsBanc Mortgage Corp.*, 199 Ariz. 284, 289, ¶ 26, 17 P.3d 790, 795 (App.2000) (same); *In re Wilcox Revocable Trust*, 192 Ariz. 337, 341, ¶ 21, 965 P.2d 71, 75 (App. 1998) (same). Roberts, however, is entitled to his costs incurred on appeal upon his compliance with Arizona Rule of Civil Appellate Procedure 21(a).

### CONCLUSION

¶ 50 For the foregoing reasons, we affirm the trial court's decision to strike the City's answer and the resulting default judgment. We also affirm the court's calculation of damages and amount of attorneys' fees, and decline to increase either award. We further decline to impose the attorneys' fee award jointly and severally upon defense counsel as a Rule 11 sanction.

CONCURRING: PATRICK IRVINE, Presiding Judge and DONN KESSLER, Judge.