NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SABRINA SMITH, *Plaintiff/Appellee,*

*v.*

SIEGLINDE M. STICK IRREVOCABLE TRUST, et al.,
*Defendants/Appellants.*

No. 1 CA-CV 19-0509
FILED 7-14-2020

Appeal from the Superior Court in Maricopa County
No.  CV2017-000730
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Manoil Kime PLC, Phoenix
By Barrett L. Kime
*Counsel for Plaintiff/Appellee*

Rosser Law Group PLLC, Phoenix
By Gary L. Rosser
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge James B. Morse Jr.[1] joined.

---

**B R O W N**, Judge:

¶1        Sieglinde M. Stick Irrevocable Trust (the "Trust") appeals the superior court's judgment entered in favor of Sabrina Smith following a jury verdict in a landlord-tenant dispute.  The Trust challenges the court's denial of a summary judgment motion, an in-trial motion for judgment as a matter of law, and the court's refusal to give a requested jury instruction. For the following reasons, we affirm.

**BACKGROUND**

¶2        Smith and the Trust executed a residential lease for a luxury condominium ("the condo") effective August 21, 2016 (the "Lease"). Before signing the Lease, Smith, who is allergic to cats, learned that previous tenants in the condo had a cat.  Through an agent, Nicole Secrest, Smith requested she be allowed to replace the second-floor carpet, and the parties added the following to the Lease: "Landlord agrees to allow tenant to replace carpet with Landlord's prior written approval of chosen carpet."

¶3        Five days before the Lease became effective, Secrest conveyed Smith's carpet selection to the Trust's agents.   The Trust rejected it, believing the color she chose, which the parties call "angora" or "angora white," was too light for a rental property.  Smith also rejected two other colors the Trust proposed.  She then offered to (1) either store and reinstall the old carpet at the end of the Lease, or (2) increase her security deposit to cover the cost of installing different carpet, which the Trust rejected.

¶4        The parties scheduled a walkthrough for August 26, 2016, with the carpet issue still unresolved.  Secrest and Smith's boyfriend, Guy

---

[1]    Judge James B. Morse Jr. replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Judge Morse has read the briefs, reviewed the record, and watched the recording of the oral argument.

Gilliand, attended the walkthrough but Smith did not. Secrest arrived first and opened the condo using a key from the lockbox. Upon arriving, Gilliand presented the following options to Lindie Rhinesmith, trustee of the Trust: (1) cancel the Lease, (2) allow Smith to install the angora carpet, (3) allow Smith to install the new carpet and store the old carpet to be reinstalled when Smith moved out, or (4) have her pay a larger security deposit to cover installation of other carpet at the end of the Lease. Gilliand also suggested Smith might make other changes to the condo, including changing light and plumbing fixtures.

¶5        Feeling pressured by Gilliand, Rhinesmith said she would consider the matter over the weekend. The parties did not complete the walkthrough, and the key Secrest used to open the condo went missing. Secrest later testified she left the key at the condo, but it was not found.

¶6        Three days after the unfinished walkthrough, Smith wrote to Rhinesmith demanding either access to the condo or the return of all funds. That same day, the Trust sent Smith a "Notice of Intention to Terminate for Material Breach of Rental Agreement" stating she had violated the Lease by not arranging for utilities at the condo by the walkthrough date. Two days later, the Trust refused Smith's demand, asserting that because Smith had not turned on the utilities or provided proof of renter's insurance, she was not entitled to access the property. The Trust also demanded access to the condo in eight days. On September 1, the Trust sent Smith a second notice alleging a health and safety violation based on her failure to turn on the utilities. Smith tried to turn on the utilities but could not do so.

¶7        Shortly thereafter the Trust filed a forcible entry and detainer action in justice court. Smith, who did not personally appear at the hearing, did not contest the Trust's right to immediate possession of the condo. Her counsel instead told the court she "never took" or "[was] never given possession." The court found it was likely Secrest still had the lockbox key and ruled as follows:

> So[,] there's only one access which means key out, no key has ever gone back in, so the agent of the tenant who did the walk through inspection has the key and that's between the tenant and the . . . agent. The fact that the tenant hasn't gone in there hasn't stepped foot in the place is immaterial; they have this agent working for them. And . . . they're legally bound to their client and their agency relationship, so therefore it's just as if the tenant has the key. . . . Now, we're gonna forget about

3

the return of the key, because if there's a question of possession it has been resolved.

The justice court entered judgment granting the Trust immediate possession but did not issue a writ of restitution.

¶8            Smith sued the Trust and Rhinesmith (as trustee and individually), alleging recission of agreement, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, and numerous violations of the Arizona Residential Landlord-Tenant Act ("ARLTA").  The Trust counterclaimed for breach of contract and breach of the ARLTA.

¶9            The Trust and Rhinesmith moved for summary judgment on Smith's claims, arguing the fact that it "delivered possession of the premises . . . when . . . Secrest[] accessed the lockbox on August 26, 2016" was dispositive.  They contended, among other things, that each of Smith's claims were barred by claim preclusion because her claims hinged on never taking possession of the condo, but the justice court had found she had.  The superior court granted summary judgment to Rhinesmith (individually) on all of Smith's claims and to the Trust on Smith's conversion claim but did not find claim preclusion.  Instead, the court found genuine issues of material fact remained, including "whether Defendant denied Smith access to the property and whether Plaintiff breached the lease agreement by failing to have the utilities turned on prior to the lease start date."

¶10           The remaining claims against the Trust proceeded to a jury trial.  At the close of evidence, the Trust orally moved for judgment as a matter of law ("JMOL") on several issues.  The court granted the motion in part, finding that Smith's "unlawful entry or . . . abuse of access" ARLTA claim would not be given to the jury.  *See* A.R.S. § 33-1376(B).  The jury returned a general verdict for Smith on all claims and counterclaims and awarded her $26,566.78 in damages.  The superior court awarded Smith $61,257.50 in attorneys' fees and $1,627.90 in costs.  The Trust timely appealed.

## DISCUSSION

### A.    Denial of Summary Judgment

¶11           The Trust argues the superior court erred in denying its summary judgment motion on Smith's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  We only review a ruling denying summary judgment in a case that has gone to trial

if the movant reasserts the issue in a Rule 50 or other post-trial motion, or the denial was based on a purely legal issue. *Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, 577, ¶ 22 (App. 2015). The Trust filed no post-trial motions. And, as noted above, the court denied the Trust's motion because it found unresolved fact questions as to the preclusive effect of the justice court judgment. Indeed, the only items in the superior court record relating to the justice court case are (1) the summons and complaint, (2) an "[u]nofficial" hearing transcript, and (3) the judgment.

¶12        Even assuming the superior court's rejection of the Trust's attempt to prevail on summary judgment based on claim preclusion could be viewed as a purely legal issue, it would not help the Trust. For the first time on appeal, the Trust argues the justice court judgment triggered *issue* preclusion. But the Trust asserted *claim* preclusion in the superior court. The Trust now concedes claim preclusion does not apply, but contends it mislabeled its argument in the summary judgment motion and substantively argued *issue* preclusion.

¶13        The Trust asserted that Smith could not relitigate whether she took possession of the condo because the issue was *or might have been* litigated in justice court. This is an element of claim preclusion, not issue preclusion. *See Pettit v. Pettit*, 218 Ariz. 529, 531, ¶ 4 (App. 2008) (claim preclusion "binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated *but also upon those points which might have been litigated*") (emphasis added). In contrast, issue preclusion applies "when the issue or fact to be litigated *was actually litigated in a previous suit*, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986) (emphasis added).

¶14        The difference between the two doctrines is significant in this case because Smith conceded the Trust was entitled to immediate possession in the justice court case. While a stipulated judgment on the merits may trigger claim preclusion, standing alone, it cannot trigger issue preclusion. *4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 102–03, ¶ 26 (2006); *see also Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 442, ¶ 14 (2018) ("[I]n the case of a judgment entered by confession, consent or default, none of the issues is actually litigated.") (citing *Chaney Bldg. Co*, 148 Ariz. at 573). Because the Trust raises issue preclusion for the first time on appeal, it has waived the argument. *See Contreras Farms Ltd. LLC v. City of Phoenix*, 247 Ariz. 485, 489, ¶ 13 (App. 2019).

### B. Sufficiency of Evidence

**¶15** The Trust next contends the superior court erred in denying its JMOL motion because Smith "failed to meet her burden of proof regarding whether she had possession of the [property]." The Trust also challenges the jury's verdict on much the same grounds. Both contentions trigger A.R.S. § 12-2102(C), which limits our appellate jurisdiction in cases tried to a jury:

> On an appeal from a final judgment the supreme court shall not consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury unless a motion for a new trial was made.

**¶16** A JMOL motion made at trial, pursuant to Rule 50(a), does not satisfy this jurisdictional requirement, as the Trust concedes in its reply brief. *See Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 183, ¶ 13 (App. 2011); Ariz. R. Civ. P. 50(a)(1) (governing motions filed once "a party has been fully heard on an issue during a jury trial"). Because the Trust did not file any post-trial or post-judgment motions, we lack jurisdiction to review the denial of the Trust's Rule 50(a) motion or the sufficiency of the evidence supporting the jury verdict. *See Williams v. King*, 248 Ariz. 311, 317–18, ¶¶ 30–31 (App. 2020); *Marquette Venture*, 227 Ariz. at 183–84, ¶¶ 13, 22.

### C. Denial of Proposed Jury Instructions

**¶17** The Trust argues the superior court erred in denying the following jury instructions:

> A party has delivered possession of a property by delivering the keys to the property and the property being vacant.
>
> . . .
>
> For purposes of determining Breach of the Arizona Residential Landlord Tenant Act, . . . "Delivery of Possession" by the landlord means making the dwelling unit keys available to the tenant.

A court must give a requested instruction "if (1) the evidence presented supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions." *Brethauer v. General Motors Corp.*, 221

Ariz. 192, 198, ¶ 24 (App. 2009). We review the refusal to give a requested jury instruction for an abuse of discretion and will not reverse absent a showing of resulting prejudice. *Id.*

¶18 The Trust based its proposed instructions on A.R.S. § 33-1310(3), which defines "delivery of possession" as "returning dwelling unit keys to the landlord and vacating the premises." That definition applies to a tenant's delivery of possession to a landlord, not a landlord's delivery to a tenant. Indeed, the only use of the phrase "delivery of possession" in the ARLTA refers to delivery by a tenant. *See* A.R.S. § 33-1321(D) (requiring a landlord to provide an itemized list of deductions within fourteen days "after termination of the tenancy and delivery of possession and demand by the tenant"). Given that the ARLTA does not expressly define a landlord's delivery of possession to a tenant, the superior court did not abuse its discretion in determining whether the jury should "use [its] common sense" in deciding whether the Trust delivered possession to Smith. *See Circle K Stores, Inc. v. Apache County*, 199 Ariz. 402, 408, ¶ 18 (App. 2001) ("By declining to define a statutory term, the legislature generally intends to give the ordinary meaning to the word.").

¶19 Moreover, the Trust does not contend the phrase "delivery of possession" was somehow beyond the understanding of the jury. *See State v. Forde*, 233 Ariz. 543, 564–65, ¶ 82 (2014) ("A trial court need not 'define every phrase or word used in the [jury] instructions, especially when they are used in their ordinary sense and are commonly understood.'") (quoting *State v. Eastlack,* 180 Ariz. 243, 259 (1994)). We therefore reject the Trust's contentions that § 33-1310(3) "is equally applicable to the delivery of premises from landlord to tenant" and that the court should have issued a specific instruction based on the statute. *See Hallmark v. Allied Prods. Corp.*, 132 Ariz. 434, 443 (App. 1982) (explaining that the trial court "need not instruct on every refinement suggested by counsel").

**CONCLUSION**

**¶20**          We affirm the superior court's judgment.  Both parties request their attorneys' fees and costs incurred in this appeal under the Lease, which provides that the prevailing party in any dispute arising from the Lease shall be awarded reasonable attorneys' fees and costs.  Because Smith has prevailed on appeal, we grant her request for her reasonable attorneys' fees and costs incurred in this appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:     AA