821 P.2d 181

**McCARTHY WESTERN CONSTRUC-TORS, INC., an Arizona corporation, Plaintiff–Appellee,**

v.

**The PHOENIX RESORT CORPORA-TION, a Delaware corporation, Defendant–Appellant.**

**No. 1 CA–CV 89–305.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 19, 1991.

Redesignated as Opinion and Publication Ordered April 2, 1991.

Reconsideration Denied May 29, 1991.

As Corrected Oct. 18, 1991.

Review Denied Dec. 17, 1991.

O'Connor, Cavanagh, Anderson, West-
over, Killingsworth & Beshears by Henry
L. Timmerman, Larry L. Smith and Nich-
olas J. Wallwork, Phoenix, for plaintiff-
appellee.

Morrison, Hecker, Curtis, Kuder & Parr-
ish by Mark A. Nadeau, Phoenix, and Mar-
tin, Cavan & Andersen, P.C. by H. Fielder
Martin, C. Walker Ingraham and Linda A.
Klein, Atlanta, Ga., for defendant-appel-
lant.

## OPINION

SHELLEY, Presiding Judge.

Defendant-appellant Phoenix Resort Cor-
poration (Phoenix) appeals from the grant-
ing of a preliminary injunction preventing
it from withdrawing money from a special

construction fund escrow account (fund agreement).

## FACTS AND PROCEDURAL HISTORY

McCarthy Western Constructors, Inc. (McCarthy), as general contractor, built the Phoenician Golf & Tennis Resort for Phoenix. To insure payment under the construction contract, the parties entered into a deposit account agreement dated April 17, 1987. That agreement was funded with approximately $16,000,000. Subsequently, an unnamed buyer (buyer) acquired a 45% interest as part-owner. At that time, Phoenix requested a substitution of security agreements for a letter guarantee. The owners deposited $91,038,200 into a partnership account and $74,485,800 into the buyer account for construction and resort opening purposes pursuant to a June 30, 1987, construction fund escrow agreement (fund agreement) between Phoenix; the buyer; Manufacturer's Hanover Trust Company (MHT), as escrow agent of the construction fund; Crescent Holdings, Inc.; and Crescent Holdings Limited Partnership. Under the fund agreement, the owner was authorized to request disbursements from the fund once a month. Paragraph 7 of the fund agreement states:

> No part of the Escrow Funds held by Agent pursuant to this Escrow Agreement shall be, at any time, subject or liable to attachment or levy at the suit of any creditor of any party to this Agreement or of any contractor, sub-contractor, supplier of labor or materials, or of any of their respective creditors. This Agreement is solely for the benefit of CHI, Phoenix Resort, Crescent Partnership and Buyer and may not be relied upon for any purpose by any other person or entity.

While the fund agreement was being prepared, Phoenix and McCarthy executed another agreement dated June 26, 1987. This agreement recited that the fund agreement provides sufficient security "to reasonably assure payment" for construction-related expenses and terminated the deposit account agreement. Paragraphs 4 and 5 of the June 26 agreement stated:

> 4. Phoenix Resort shall take all actions reasonably necessary to assure that the funds deposited in the Accounts (as that term is defined in The Construction Fund Escrow Agreement) are utilized only for the purposes described in The Construction Fund Escrow Agreement. Phoenix Resort shall not permit the Accounts to be closed, without McCarthy's written consent, until such time as McCarthy certifies to MHT that is [sic] has been paid all sums due to McCarthy pursuant to the Construction Contract. *In the event of a dispute regarding any indebtedness asserted by McCarthy, the Accounts shall not be closed until such dispute is finally resolved* (through litigation or otherwise); provided, however, that during the pendency of any such dispute, any funds in the Accounts may be used to pay for construction activities relating to The Phoenician or for any other purpose consistent with the terms of The Construction Fund Escrow Agreement *if, but only if, funds are retained in the Accounts in the amount of the indebtedness asserted by McCarthy.*
>
> 5. *Except as provided herein,* McCarthy shall have no right or property interest in the Accounts or any funds held therein. [Emphasis added.]

Towards the end of the construction, Phoenix ceased making payments to McCarthy. McCarthy subsequently stopped work because of non-payment. McCarthy filed a mechanics lien in October, 1988, for $19,443,000 to protect its interests and the interest of subcontractors.

McCarthy sued to foreclose its mechanics lien, to recover contract damages in an amount of $18,449,549, and to enjoin Phoenix from making any further withdrawals from the fund which was in escrow at MHT. McCarthy's amended complaint added a claim for an equitable lien against the fund. McCarthy alleged that the amount then in the fund was less than the amount of its asserted indebtedness and requested specific performance of the guaranty provisions of the security agreements.

Phoenix answered and counterclaimed asserting that, among other things, 1)

McCarthy had double billed and failed to account for legitimate back charges; 2) part of the escrow money was needed to pay other contractors and vendors for resort projects and to correct McCarthy's defective work; 3) McCarthy had an adequate legal remedy through the judgment it was seeking against a solvent company as well as through its mechanic's lien foreclosure action. Phoenix alleged that McCarthy's assertion of Phoenix's indebtedness to it was not made in good faith and with clean hands.

McCarthy, in its lawsuit, asserted an indebtedness of approximately $18,400,000. It was ascertained that the balance in the fund agreement was less than the amount *asserted.* Furthermore, MHT had been instructed to prepare for another withdrawal. The trial court granted McCarthy's request for a temporary restraining order followed by a preliminary injunction enjoining Phoenix from making or permitting further withdrawals from the fund agreement. The preliminary injunction is the order at issue in this appeal.

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN ENTERING A PRELIMINARY INJUNCTION WITHOUT ALLOWING THE DEFENSE A REASONABLE OPPORTUNITY TO PRESENT ITS CASE?

### STANDARD OF REVIEW

■ We review the trial court's order granting a preliminary injunction for abuse of discretion. *Financial Assoc's, Inc. v. Hub Properties, Inc.,* 143 Ariz. 543, 545, 694 P.2d 831, 833 (App.1984); *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). An abuse of discretion exists if the trial court 1) applied the incorrect substantive law or preliminary injunction standard; 2) based its decision on a clearly erroneous finding of fact that is material to the decision to grant or deny the injunction; or 3) applied an acceptable preliminary injunction standard in a manner that results in an abuse of discretion. *Zepeda v. United States Immigration & Naturalization Serv.,* 753 F.2d 719, 724 (9th Cir.1983).

### DISCUSSION

At the commencement of the preliminary injunction hearing held on April 18, 1989, the trial court stated that it had reserved only two days for the hearing. It is apparent from statements made by counsel for Phoenix that he assumed that McCarthy would have one day to present its evidence and Phoenix would have the second day to present its case.

In the afternoon of the second and final day of the hearing, the court reconvened at 2:05 p.m. and completed testimony of a McCarthy witness who had commenced testifying in the morning. Thereafter, McCarthy recalled a witness who had previously been on the stand two different times.

When testimony of the recalled witness was concluded, McCarthy rested. Thereafter, preliminarily to the making of the oral motion to dismiss by Phoenix, a discussion occurred between the court and Phoenix's counsel, Joseph McGarry. The pertinent portions are:

THE COURT: The kind of things you generally try to establish are generally handled by legal argument, first of all.

MR. MCGARRY: But I have to have some base to argue from.

THE COURT: Affidavits generally provide it. Depositions, or some other form of discovery, generally provides it. Avowals by counsel generally provide it. Those are three alternative methods to get facts into the record which the Court will accept. Sometimes judicial notice of various things, of the files, will provide it.

. . . .

THE COURT: One of the two.

*I think I have enough evidence on hand* right now to make a determination ·with respect to the TRO, with respect to the continuation or the elimination of the TRO.

. . . .

I think we are really going to get into the legal arguments more than anything else. *I think I am at a point I don't believe I need any more. I think we are*

*going to have this rush to get more. You can step back, and Mr. Braun will now take the record for the legal arguments.*

. . . .

MR. MCGARRY: . . . .

But let me—What I was driving at, Your Honor, was going to put a witness on on [sic] unclean hands, which is something you look at.

THE COURT: Fine. If that's what we are going to deal with, fine.

MR. MCGARRY: Yeah.

THE COURT: But I think on the financial conditions and the various other things about which we have talked, that we are—*basically have sufficient information for me* to make a determination whether or not—well, also, with the confession on the record.

MR. TIMMERMAN (attorney for McCarthy): O.K.

THE COURT: *I think we have got enough on the record, I think we have got enough in the record for me to make a determination.* [Emphasis added.]

Phoenix then made a motion to dismiss which was argued at length. When the arguments were concluded on the motion to dismiss, Mr. McGarry stated, "I'd like to put on my case, Your Honor, in defense, as well as be heard on the bond at length. Because it would be, you know, humongous damages." The court responded, "O.K. I'm going to take a recess for a period of time. I don't know how long it will take."

The court reconvened at 4:18 p.m. Without ruling on the motion to dismiss and without comment with regard to Mr. McGarry's statement that he desired to put on evidence, the court proceeded to orally set forth its findings of fact in the process of granting the preliminary injunction. When the court concluded its ruling, Mr. McGarry stated:

No, no. That's the point I was making, Your Honor. The point I would also make, you have totally eliminated and cut off the defendant's case and permitted no proof to come forward from the defendant in a major matter. I had at least four significant witnesses, so I find myself in the position, with the Court's permission, that I will have to make an offer of proof as to the—

THE COURT: Go ahead.

MR. MCGARRY: As to the evidence that you declined to hear.

The court permitted the offer of proof.

■■■ Phoenix presented an offer of proof with regard to lack of good faith, unclean hands, and defective work. The trial court did not make any comment with respect to the offer of proof after it was made. Offers of proof made after the court has ruled are most often futile except for making a record for appeal. In any event, an offer of proof by counsel is not a substitute for sworn testimony.

■■■ We reject McCarthy's assertion that Phoenix waived any objection to the hearing schedule. At the beginning of the hearing, Mr. McGarry stated to the court:

MR. MCGARRY: . . . Now, I assume that you said what you meant and meant what you said last Thursday [the date of the temporary restraining order], Your Honor, when you said, ["G]entlemen, there will be two days available on my calendar for an evidentiary hearing.["] And while I could take a great deal longer, in terms of the need for an accounting because we didn't get an audit we are entitled to, *I have assumed that I have to put in some kind of a compressed case in my share of the two days, which I regard as fifty percent.*

THE COURT: You assume very accurately, Mr. McGarry.

MR. MCGARRY: *So, we will put in a prima facie case. But you do not throw the baby out with the bath because the Court has other matters to attend to. The rules for preliminary injunction don't change if we are all short on time.* And you start with the notion, Your Honor, that you must have not just the usual elements, but the probable success on the merits is one of the things the Court takes a look at. . . . . [Emphasis added.]

Phoenix was not given any time to present its witnesses. McCarthy contends that Phoenix improvidently used its time in cross-examining McCarthy's witnesses at very great length. However, we note that neither the trial court nor McCarthy made an attempt to terminate the cross-examination on the basis of relevancy or repetiveness.

█ This court has held that a preliminary injunction cannot issue without the opportunity for a hearing. *Nu–Tred Tire Co. v. Dunlop Tire & Rubber Corp.*, 118 Ariz. 417, 419, 577 P.2d 268, 270 (App. 1978). A "hearing" is a proceeding "in which witnesses are heard and parties proceeded against have a right to be heard, and is much the same as a trial...." Black's Law Dictionary 649 (5th ed. 1979). In this case, the trial court abused its discretion by denying Phoenix a reasonable opportunity to present its evidence despite the existence of serious factual disputes with regard to good faith and fair dealing as it relates to the assertion of the amount of indebtedness.

Rule 65(a)(1), Arizona Rules of Civil Procedure, reinforces Phoenix's right to present evidence. It provides: "No preliminary injunction shall be issued without notice to the adverse party." Courts have held that this language requires that the adverse party, Phoenix, in this case, be heard. *Sims v. Greene*, 161 F.2d 87, 88 (3d Cir.1947); *City of Houston v. Houston Light & Power Co.*, 530 S.W.2d 866, 869 (Tex.Civ.App.1975); *Lawrence Warehouse Co. v. Rudio Lumber Co.*, 89 Idaho 389, 392, 405 P.2d 634, 637 (1965); *see also Nu–Tred Tire Co.*, 118 Ariz. at 419, 577 P.2d at 270. Rule 65(a)(2) clarifies the implication of Rule 65(a)(1), by providing that evidence received upon an application for a preliminary injunction evidence is part of the trial record and need not be repeated at the trial on the merits. Rule 65(a)(2) contemplates a hearing on the application for a preliminary injunction.

█ The right to a hearing with evidence presented by both sides is also reflected in the requirement that a trial court issue findings of fact when granting a preliminary injunction. Ariz.R.Civ.P. 52(a); *Amfac Elec. Supply Co. v. Rainer Constr. Co.*, 123 Ariz. 413, 600 P.2d 26 (1979); *Bayless Inv. & Trading Co. v. Bekins Moving & Storage Co.*, 26 Ariz.App. 265, 547 P.2d 1065 (1976). Findings must be based on more than a one-sided presentation of the evidence. *E.E.O.C. v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 640 (4th Cir.1983), *rev'd on other grounds*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *Sims*, 161 F.2d at 89. Fact-finding requires a fact finder to weigh and appraise evidence offered by all parties to a controversy, not one party alone, especially where, as here, the parties seriously dispute the facts. *Sims*, 161 F.2d at 89.

█ In *Sims*, the court stated:

The allegations of the pleadings and affidavits filed in the cause are conflicting. Such conflicts must be resolved by oral testimony since only by hearing the witnesses and observing their demeanor on the stand can the trier of fact determine the veracity of the allegations made by the respective parties. If witnesses are not heard the trial court will be left in the position of preferring one piece of paper to another. Greene was given no opportunity to present oral testimony on his behalf except for one witness whose testimony was immaterial to any issue presented by the pleading. Sims insists that Greene was permitted to offer in evidence certain documents material to the issue but an examination of the record indicates that these documents, at least the most important of them, were read into the record by Greene's counsel in his protracted cross-examination of Sims. Questions asked by counsel are not evidence. The truth of the matter is that Greene was given no fair opportunity to present testimony prior to the issuance of the preliminary injunction.

. . . .

The conclusion is inescapable that since a district court is required by the rule to make findings of fact, the findings must be based on something more than a one-sided presentation of the evidence. *Finding facts requires the exercise by*

*an impartial tribunal of its function of weighing and appraising evidence offered, not by one party to the controversy alone, but by both.*

*Sims,* 161 F.2d at 88–89 (emphasis added). We agree with *Sims* that a party opposing a preliminary injunction must be given a reasonable opportunity to present oral testimony where there are disputed issues of material facts.

In the case of *SEC v. G. Weeks Securities, Inc.,* 678 F.2d 649, 651 (6th Cir.1982), the court stated:

> We believe that order properly issued because the District Court had before it adequate documentary evidence upon which to base an informed, albeit *preliminary* conclusion ... Where the resolution of the questions to be considered in issuing a *preliminary injunction turns on legal rather than factual conclusions,* the taking of oral testimony by both sides is not a prerequisite to a fair hearing. *SEC v. Frank,* 388 F.2d 486 (2d Cir.1968). [Emphasis added.]

In this case, the right to a preliminary injunction does not turn on legal conclusions alone but there are disputed material factual issues.

■ In *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986), our supreme court held that good faith and fair dealing are implied in every contract. McCarthy contends that a party does not violate an implied covenant of good faith and fair dealing if it *subjectively* has a good faith basis for asserting its claim. Therefore, McCarthy asserts that since the overwhelming evidence shows that it instituted the present proceedings in good faith reliance on the provisions of the June 26 agreement, it did not violate the covenant of good faith and fair dealing. We reject this position. Evidence presented by a plaintiff cannot be considered overwhelming or dispositive until defense evidence has been presented and evaluated in light of the plaintiff's evidence. Furthermore, the assertion must be *objectively* reasonable.

*Restatement 2d of Contracts* § 205, Comment E, states: "The obligation of good faith and fair dealing extends to the *asser-tion,* settlement, and litigation of contract claims and defenses." In the case of *Tucson Medical Center v. Zoslow,* 147 Ariz. 612, 712 P.2d 459 (App.1985), the lessor, Tucson Medical Center (TMC), sought to enjoin Zoslow (lessee) from subleasing. TMC believed deed restrictions prohibited the sublease, and therefore refused to consent to it. The court denied injunctive relief, and found that TMC violated its implied obligation to act in good faith when it refused to consent to the proposed sublease, despite its subjective belief. The court stated:

> A reason for refusing consent, in order for it to be reasonable, must be *objectively* sensible and of some significance.... [TMC's] reading of the deed restrictions cannot be considered to be reasonable. The wrongful interpretation was per se unreasonable.

147 Ariz. at 615, 712 P.2d 459 (emphasis added).

In this case, Phoenix should have been allowed to present evidence with regard to its claim that McCarthy's assertion of Phoenix's indebtedness violated the implied covenant of good faith and fair dealing. The assertion must be objectively reasonable. Whether or not there was defective workmanship by McCarthy is not an issue for determination in a preliminary injunction hearing with respect to McCarthy's assertion of indebtedness under the June 26 agreement.

■ Phoenix asserts that in order for McCarthy to be successful in its request for a preliminary injunction, it would have to establish its right to an equitable lien. We disagree. The June 26 agreement prohibited the closure of the accounts provided for in the fund agreement without McCarthy's written consent. It provided that "in the event of a dispute regarding any indebtedness asserted by McCarthy, the accounts shall not be closed until such dispute is finally resolved." It also stated that during the pendency of the dispute, Phoenix could use funds in the account for construction activities "if, but only if, funds are retained in the accounts in the amount of indebtedness asserted by

McCarthy." Holding that McCarthy would have to establish its right to an equitable lien in order to enforce the terms of the June 26 agreement would nullify the entire purpose of that agreement.

Phoenix posits that since McCarthy has filed a mechanics lien which is in first position on the Phoenician, this obviates the right to enforce the agreement. We disagree. Phoenix is disputing the validity of the mechanics lien.

Phoenix also asserts that McCarthy could seek the legal remedies of attachment and garnishment against Phoenix's property or it could obtain a judgment lien on the unencumbered Phoenician if the mechanics lien is invalid. However, if McCarthy was limited to these other remedies, the relevant provisions in the June 26 agreement would be nullified and without purpose.

## CONCLUSION

The order granting the preliminary injunction is reversed. This case is remanded to the trial court for proceedings consistent with this decision.

GERBER and BROOKS, JJ., concur.