NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

EVERETT S. BUTLER, a single man, *Petitioner/Appellant*,

*v.*

ROBERT O. DYER and CHRISTINE DYER, husband and wife,
*Defendants/Appellees*.

No. 1 CA-CV 12-0487
FILED 4-22-2014

Appeal from the Superior Court in Maricopa County
No. CV2009-012368
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

The Butler Law Firm, Phoenix
By Matthew D. Williams, Everett S. Butler
*Counsel for Petitioner/Appellant*

Law Office of Pamela B. Petersen, Peoria
By Pamela B. Petersen
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Jon W. Thompson joined.

---

**W I N T H R O P,** Presiding Judge:

**¶1**  Petitioner/Appellant, Everett S. Butler, appeals the trial court's judgment and denial of his motions for new trial. Butler challenges numerous rulings by the court in his multi-count action against his former law partner, Robert O. Dyer – an action resulting from the dissolution of the partnership. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**  Dyer and Butler were partners in the law firm of Dyer & Butler, L.L.P. ("D&B"), formed in 2001, with Dyer owning a sixty percent share of the partnership and Butler owning a forty percent share. The partnership occupied offices at 2800 North Central Avenue in Phoenix pursuant to a lease in effect until December 31, 2009. Pursuant to an oral partnership agreement, the partners agreed to share profits and expenses in accordance with their partnership share.[1]

**¶3**  Butler eventually became dissatisfied with the arrangement, and on March 31, 2007, he informed Dyer he believed it was unfair for him to be a minority partner when he billed more hours than Dyer. The parties disagree on exactly what occurred, but as a result of the ensuing discussion, Dyer and Butler no longer shared profits, and Butler no longer used or contributed to the salaries of the junior partner, Wayne Ducharme, or the associate, Bryan Folger.

**¶4**  The next day, Dyer and Ducharme formed a partnership ("D&D"), with Folger as an employee. D&B's office manager, Joan Cardillo, set up separate accounts and also maintained a joint account for

---

[1]  The office, photocopy, and telephone leases were obligations of D&B. There were no personal guaranties in effect for these continuing expenses.

payments received for work performed before March 31, 2007. Butler and D&D continued to occupy the 2800 North Central Avenue office under the name Dyer & Butler, L.L.P., and continued to share expenses, with Butler paying forty percent of the rent and D&D paying sixty percent.

¶5 Butler was dissatisfied with paying forty percent of the rent and proposed paying twenty-five percent, a portion he claimed was commensurate with the square footage he used. On June 1, 2007, Butler, Dyer, and Ducharme discussed the rental allocation. Dyer refused to agree to a reduction in Butler's rental share obligation. According to Butler, Dyer told Butler they had an obligation to each other to continue to pay the rent, the copy machine lease, and the telephone contract on a sixty/forty basis until the end of the term commitments, and the two agreed. According to Dyer, he made no promise to Butler that he would pay for sixty percent of the remaining lease term and denied having any discussion regarding the copier lease or telephone contract. The parties continued sharing the rent and expenses on a sixty/forty basis.

¶6 In August 2007, after having been contacted by a recruiter, Dyer met with Marty Harper, the managing partner of the Phoenix office of Shughart Thompson & Kilroy ("STK"), to discuss a possible move to that firm. The discussions became serious in November, and an oral offer was extended to Dyer around Thanksgiving.

¶7 On December 1, 2007, Dyer informed Butler that he and Ducharme would be leaving in January. On December 10, Dyer informed Butler that he and Ducharme would be joining STK,[2] and that STK was willing to assume the responsibility of the office lease and would attempt to sublease the space if Butler moved out. Butler contended he "couldn't move" because he had multiple trials pending, he would not "stiff the landlord," and Dyer should honor his obligation to continue to pay sixty percent of the rent and expenses for the duration of the contract terms. Dyer and Ducharme started work at STK in early January 2008. Dyer paid his share of the rent for D&B through January.

¶8 On February 2, 2008, Dyer and Butler met at the 2800 North Central Avenue office to discuss firm matters. During the meeting, Butler told Dyer that, in reviewing the firm's accounting records, he had discovered Dyer had performed estate planning work between 2001 and 2007 for which no bill had been sent or for which a bill had been sent but

---

[2]     Folger had already left D&D.

3

no money received. Butler would not provide specifics; instead, he accused Dyer of performing estate planning work and not sharing the proceeds with Butler. The meeting ended in a confrontation.

¶9          In a March 27, 2008 letter to Butler, Dyer stated in part:

> I have on several occasions offered to take full financial responsibility for the remaining two years of our lease, provided, you, too, would relocate, thereby allowing Shughart Thomson & Kilroy's real estate agent to sublease our space. In the alternative, I have offered to remain financially responsible for the old space or the new space at 2800 North Central, whichever you chose not to occupy, provided you allow the dividing wall to be replaced and you would elect between one or the other of the two leased areas. With the replacement of the wall, I would then have a discrete area to sublease. It would not matter to me whether it was the front, or old space, or the rear, or new space.

Butler responded the same day, reiterating that he was unwilling to relocate, and stating he could not find the same rate per foot elsewhere. He expressed a willingness to allow the back office to be walled off and sublet, but insisted Dyer would still be responsible for paying sixty percent of the rent for the remaining space, which only Butler would occupy. No agreement was reached, and Butler remained in the entire leased space at 2800 North Central Avenue until the end of the lease term.

¶10          In April 2009, Butler sued Dyer. Butler's First Amended Complaint asserted four claims for relief. The first claim for relief, for breach of contract, alleged Dyer had breached the partnership agreement by, *inter alia*, not paying his share of the firm's obligations, including the office lease, the copy machine lease, and the telephone contract after January 31, 2008. The claim also alleged Dyer had breached both the agreement and his duty of good faith and fair dealing by not sharing all monies received by him for work performed and by refusing to allow disbursement to Butler of Butler's share of funds being held by Fidelity National Title Agency, Inc. ("Fidelity") for D&B related to the "Fredricksen matter." Butler alternatively sought an accounting of all receivables, payables, and other monies for D&B and Dyer. The second claim for relief, for tort (fraud, misappropriation, conversion, and breach of fiduciary duty), alleged Dyer had concealed or misappropriated partnership receivables and other monies, made false representations to Butler about those receivables and monies, failed to work an appropriate

number of billable hours, made physical and verbal threats to harm Butler in an effort to intimidate him, and not paid Butler his share of the Fredricksen funds. The third claim for relief, for assault, alleged that on February 2, 2008, Dyer made physical and verbal threats to do Butler bodily harm. The fourth claim for relief specifically sought payment of Butler's share of the Fredricksen funds. The claim alleged Fidelity was holding $5,432.88 belonging to D&B, and Dyer had refused to allow disbursement to Butler of the $2,173.15 that was his forty percent share.[3]

**¶11** In his answer, Dyer agreed that an accounting of partnership assets was necessary, but otherwise generally denied the allegations. Dyer also asserted as an affirmative defense that Butler had failed to mitigate damages, if any existed.

**¶12** Before trial, the court granted partial summary judgment to Dyer on Butler's second claim for relief. The court reasoned that "there is no factual basis for turning this contract/partnership/accounting dispute into a tort or fraud claim."

**¶13** In their joint pretrial statement filed August 17, 2011, the parties agreed the interpleaded Fredricksen funds should have been allocated as follows: $5,432.88 to D&B (with $2,173.50 due Butler[4] and $3,259.72 due Dyer) and $2,289.29 to D&D. Butler included as an issue in the pretrial statement whether Dyer had breached the duty of good faith and fair dealing by not giving Butler sufficient notice of his intent to join STK.

**¶14** A few days later, at the court's request, the parties submitted briefs addressing whether the court rather than the jury could decide the accounting claim and the accounting should precede a trial on the other claims. Butler argued neither party had disclosed any facts to establish a right to an accounting or calculate the value of the firm's assets, and asserted the accounting claim should be dismissed. Dyer argued the court should conduct the accounting before trial, the winding up of the partnership was incomplete, and the former partners were at an impasse.

---

[3] In September 2009, pursuant to the parties' stipulation and a court order, Fidelity deposited the Fredricksen funds ($7,722.17) with the court.

[4] The correct amount was later recognized to be $2,173.15.

**¶15** Trial began on September 19, 2011, and Butler testified on direct examination over four days. Testimony was also taken from Dyer, Ducharme, Harper, and Cardillo.

**¶16** After Butler rested his case-in-chief, the court granted Dyer's motion for judgment as a matter of law ("JMOL"), *see* Ariz. R. Civ. P. ("Rule") 50(a), on Butler's breach of the duty of good faith and fair dealing claim with respect to everything except whether Dyer had provided sufficient notice he was leaving to join STK. The court also dismissed without prejudice the accounting claim brought by Butler and joined in by Dyer. The court noted the request for dismissal was based on Butler's argument that Dyer had failed to disclose a calculation of assets. The court expressed concern that no hearing had been conducted on the reason for the failure to disclose and dismissal would leave unresolved the accounting of the assets, which was still a dispute between the parties.

**¶17** At the close of evidence, Dyer moved for JMOL on Butler's breach of contract claim alleging Dyer had not shared proceeds of certain estate planning work. Dyer argued that no evidence showed money had been received and not distributed. The court granted the motion. The court denied other Rule 50 motions by Dyer, including for judgment on Butler's breach of contract claim based on Dyer's alleged promise to pay the rent and other expenses for the duration of their terms, and on Butler's claim for breach of the duty of good faith and fair dealing related to insufficient notice.

**¶18** The dispute was submitted to the jury on Butler's claim that Dyer breached his agreement to pay his share of the lease and other office expenses for the duration of the term and on Dyer's related mitigation defense, that Dyer breached the duty of good faith and fair dealing by not giving Butler sufficient notice of his intent to leave for another law firm, and that Dyer assaulted Butler.[5]

**¶19** On September 28, 2011, the jury found in favor of Dyer on the breach of contract claim, but found in favor of Butler on the breach of

---

[5] The jury also considered Butler's promissory estoppel claim that Dyer should be bound by his alleged promise to pay sixty percent of the expenses even if no binding contract was created, and Butler's claim that Dyer's assault was for the benefit of his marital community. As discussed below, the parties agreed the disposition of the Fredricksen funds need not be submitted to the jury, as all agreed to the appropriate allocation.

the duty of good faith and fair dealing claim, awarding him $16,250.71. The jury also found Dyer had assaulted Butler, but awarded no damages.

¶20           Dyer renewed his motion for JMOL, and alternatively moved for a new trial on the claim for breach of the duty of good faith and fair dealing. *See* Ariz. R. Civ. P. 50(b). The court granted the motion for JMOL, and alternatively conditionally granted the motion for new trial, finding Dyer had given sufficient notice as a matter of law and the failure to give notice of preliminary interest in leaving a law firm did not violate the duty of good faith and fair dealing.

¶21           The court entered judgment on March 28, 2012. In its judgment, the court denied a motion by Butler for sanctions pursuant to Rule 68(g), but found each party had prevailed in part on the contract claim,[6] and thus each would bear his own attorneys' fees and costs.

¶22           Butler filed a motion pursuant to Rule 59(a), Ariz. R. Civ. P., seeking a new trial on his breach of contract and breach of the duty of good faith and fair dealing claims based on alleged admissions by Dyer that he was liable for the rent and expenses. Butler also moved for a new trial on the ground that the court wrongly excluded from evidence certain handwritten notes he claimed to have made immediately after the June 1, December 1, and December 10, 2007 meetings with Dyer. Butler also filed motions for new trial regarding the accounting dismissal, contending it should have been with prejudice, and the estate planning claim. The court denied all four motions for new trial. Butler appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (5)(a) (West 2014).[7]

**ANALYSIS**

   I.      *Granting JMOL as to the Breach of the Duty of Good Faith and Fair Dealing Claim*

¶23           Butler argues the trial court erred in granting Dyer's renewed Rule 50 motion for JMOL and alternative Rule 59 motion for new

---

6      The court ordered Dyer to pay Butler $478.00 from funds in a trust account held by the successor firm to STK.

7      We cite the current version of the applicable statutes if no revisions material to our decision have occurred since the relevant date.

trial on Butler's breach of the duty of good faith and fair dealing claim pertaining to the sufficiency of the notice Dyer provided before leaving the 2800 North Central Avenue office.

¶24     We review *de novo* a trial court's grant of a renewed motion for JMOL. *McBride v. Kieckhefer Assocs., Inc.*, 228 Ariz. 262, 265, ¶ 10, 265 P.3d 1061, 1064 (App. 2011).  A court properly grants a renewed JMOL if the facts presented in support of a claim have so little probative value, given the quantum of evidence required, that a reasonable person could not agree with the position advanced by the proponent of the claim.  *See Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, 194, ¶ 33, 195 P.3d 645, 653 (App. 2008) (citations omitted).  In making our determination, we review the evidence in the light most favorable to upholding the jury's verdict. *McBride*, 228 Ariz. at 265, ¶ 10, 265 P.3d at 1064.  A renewed motion for JMOL may not be granted on grounds not raised in the initial motion.  *See Chavez v. Tolleson Elementary Sch. Dist.*, 122 Ariz. 472, 476, 595 P.2d 1017, 1021 (App. 1979).

¶25     In every contract, there is an implied covenant of good faith and fair dealing, which requires the contracting parties to refrain from acting "to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986) (citations omitted).  In other words, the parties are precluded from engaging in conduct that would deny benefits the other party "had the right to expect from the contract or the contractual relationship." *Id.* at 154, 726 P.2d at 570.  A person does not violate the duty of good faith and fair dealing if that person's reason for engaging in the conduct at issue was objectively reasonable.  *See McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 526, 821 P.2d 181, 187 (App. 1991).

¶26     Butler contends Dyer breached the duty of good faith and fair dealing by failing to give sufficient notice of his departure from the 2800 North Central Avenue office.  At trial, Butler testified that, at their June 1 meeting, he and Dyer agreed they would be responsible to each other on a sixty/forty basis for the rent and office expenses until the end of the term of the commitments, the agreement was not conditioned on whether either party decided to leave, Dyer advised him on December 1 that Dyer and Ducharme were leaving, and had he known earlier, he could have exercised other options.  Butler asserted that, as of December 2007, he could not have moved, even within the same building, because he had multiple successive trials pending.

¶27 Dyer testified that, after Butler declared he would no longer share profits or contribute to the salaries of the associates, he and Butler continued to share expenses on a sixty/forty basis as a continuation of the partnership agreement. Dyer denied they paid expenses in that manner as a result of any discussion or negotiation and testified he did not believe they had any discussion in which either stated they would be responsible for the rent through the term of the lease. Dyer testified he was contacted by a recruiter on behalf of STK, he was not initially interested in moving, he met with Harper for the first time in August 2007, discussions subsequently became more serious, and he told Butler he would be leaving within four days after making the decision. Dyer testified he told Butler on November 30 that he would be leaving in early January and he began work at STK on January 4 or 5, 2008.

¶28 Ducharme denied reaching any agreement with or making any promises to Butler regarding the rent on behalf of either himself or Dyer. He testified he and Dyer first met with Harper in early fall 2007, met with someone from STK's Kansas City office in October or November, decided to join STK in December, and began work at STK in January 2008.

¶29 Harper testified he contacted Dyer in late summer or early fall 2007 after learning Dyer might be interested in moving from his firm to STK. According to Harper, discussions became serious in November, STK made a verbal offer around Thanksgiving and mailed a formal offer in early December, and Dyer accepted sometime in December.

¶30 Cardillo testified she believed she and Dyer first discussed the possibility of her going with him to work at STK in June 2007.

¶31 In moving for JMOL, Dyer argued that any duty of good faith and fair dealing did not require law partners to inform one another about interest in another firm or dictate how much notice was required. He noted that no evidence was presented that the partnership agreement included any provision regarding required notice, and contended a reasonable juror could not conclude that giving two months' notice was a breach of a duty. He further argued Butler had not shown he had been deprived of any benefit of the partnership agreement by Dyer not informing him of the potential move in August 2007. Butler responded that the duty "to give each other a heads up" attached to the original partnership agreement, as well as the modified agreement of June 2007. Butler contended Dyer had a duty to tell him Dyer was considering leaving because leaving would deprive him of the benefit of his bargain - that is, having Dyer pay sixty percent of the rent until the end of the term.

¶32        After the jury returned a verdict in favor of Butler, Dyer renewed his motion for JMOL, and moved alternatively for new trial, both of which the court granted.  The court found the failure of a law partner to give notice of an intent to leave the partnership until solidifying a deal with a new law firm was not a breach of the covenant of good faith and fair dealing.  The court further found that, by giving thirty days' notice and paying an additional thirty days' rent, Dyer had provided sufficient notice as a matter of law.

¶33        On appeal, Butler argues the trial court should not have considered Dyer's Rule 50 arguments.  Butler asserts Dyer failed to disclose his defenses, including that he had no obligation to disclose preliminary discussions, that he did not breach any agreement, that Butler had shown no damages, and that the notice he gave Butler was sufficient.

¶34        Litigants must disclose in writing to all other parties the factual basis and legal theory of each claim or defense.  *See* Ariz. R. Civ. P. 26.1(a)(1)-(2).  A party failing to disclose information in compliance with Rule 26.1 "shall not, unless such failure is harmless, be permitted to use" that information except for good cause shown.  Ariz. R. Civ. P. 37(c)(1).  The disclosure rules are intended to give the parties a reasonable opportunity to prepare for trial; they do not require scripting of expected testimony or disclosure of every detail.  *Bryan v. Riddel*, 178 Ariz. 472, 476 n.5, 875 P.2d 131, 135 n.5 (1994).  They are to be applied in a common sense manner and interpreted to maximize the likelihood of a decision on the merits.  *Rivers v. Solley*, 217 Ariz. 528, 530-31, ¶ 13, 177 P.3d 270, 272-73 (App. 2008) (citation omitted).  They are not intended to be a weapon for those engaged in gamesmanship.  *Bryan*, 178 Ariz. at 476, 875 P.2d at 135.  We review for an abuse of discretion a court's denial of a sanction for nondisclosure.  *Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 426, ¶ 5, 79 P.3d 673, 675 (App. 2003).

¶35        We find no abuse of discretion in the court's consideration of Dyer's arguments.  Dyer essentially argued that Butler had not proved the elements of his claim.  Butler cannot reasonably assert he was surprised by any such argument.  Dyer's general denial that he did not breach the duty of good faith and fair dealing and the undisputed fact that he gave notice in December 2007 necessarily implicated his argument that such notice was sufficient, if any notice was required.  No further disclosure was required.  Moreover, Dyer's renewed motion was fully briefed, and Butler had full opportunity to argue against Dyer's contentions and did so.

¶36        We also agree with the court's reasoning that a law partner's failure to notify his partner of preliminary discussions to join another firm does not breach the duty of good faith and fair dealing and that Dyer, by effectively giving sixty days' notice, gave sufficient notice.

¶37        According to Butler's testimony, under the oral agreements on which Butler bases his claim, Dyer and Butler agreed to continue to split certain office expenses, including the rent, on a sixty/forty basis until the end of the terms of the individual contracts. Nothing in this agreement states or implies a duty to give notice of a certain period of time in the event one party chooses to leave. In the trial court, Butler argued that the duty was encompassed in their agreement because the duty was implied in every contract. Butler is mistaken.

¶38        Implied in every contract is a duty to act in good faith and refrain from engaging in conduct that would deprive a party of the benefit that party had a right to expect from the agreement. *See Rawlings*, 151 Ariz. at 153, 726 P.2d at 569. From their agreement, as asserted by Butler, Butler had an expectation that Dyer would continue to pay sixty percent of the rent and other office expenses. A right to greater notice that Dyer intended to leave did not flow from any such agreement. If anything deprived Butler of the benefit of the alleged agreement, it was Dyer's decisions to leave and ultimately not continue to pay his share, not any delay in notification of those decisions. Butler claims he was denied the opportunity to make other arrangements or mitigate his damages by the lack of notice, but these were not benefits that flowed from the alleged contract. Moreover, it was Butler who rejected every offer to allow Dyer and/or STK to market some or all of the premises, and who insisted on remaining in the entire leased space.

¶39        By virtue of his contractual relationship with Butler, Dyer had a duty to act in good faith, or in an objectively reasonable manner. *See id.*; *McCarthy W. Constructors*, 169 Ariz. at 526, 821 P.2d at 187. Dyer's conduct in this regard was objectively reasonable. He gave Butler notice within days of receiving the offer and thereafter paid an additional two months' rent; accordingly, we agree with the trial court that Dyer gave Butler sufficient notice.[8]

---

[8]        Butler contends evidence was presented that Dyer knew as early as August he was leaving for STK. Butler testified to finding a document on the D&B computer system from Dyer to STK regarding Dyer's book of

## II.     Granting JMOL as to "Undisclosed" Partnership Revenue

**¶40**      Butler next argues the trial court erred in granting Dyer's Rule 50 motion on Butler's claim that Dyer breached their partnership agreement and the duty of good faith and fair dealing by not paying Butler his forty percent share of certain estate planning fees Butler claimed Dyer had earned but not disclosed to him.

**¶41**      At trial, Butler testified he found estate planning documents on the D&B computer system for clients from whom he could not recall receiving payment.  He produced an exhibit consisting of computer screen printouts of Dyer's estate planning files with redacted client names and the titles of the documents, including matters on which Butler claimed work was performed but for which he received no share of fees.  Butler testified as to what he understood the fees would have been for preparing those documents, based on the type of document involved, and assigned a value to each document.  He calculated that the total of unpaid fees was $10,100, of which he sought thirty percent from Dyer.  Butler testified that, although bills had been sent for some of those documents, no money had been received by the firm for any of those matters.  He acknowledged lawyers do not always bill their clients, but stated he saw no evidence the matters had been "written off."  He claimed each partner always told the other about plans to do pro bono work, and Dyer had not informed him he was not charging for or writing off this work for these clients.

**¶42**      Dyer testified he had received no money on the side for any work performed and secreted no money from Butler.  He denied that he and Butler discussed when they performed work for free, stating he did not feel he needed to tell Butler and did not do so.  Dyer also explained

business in August 2007.  Dyer objected to this testimony as hearsay and on the ground the "mystery document" had never been disclosed.  The court sustained the objection and ordered the testimony stricken.  We therefore do not consider it.  Butler also cites Cardillo's testimony that she "believed" Dyer first discussed the possibility of her working for him at his new firm in June 2007.  Although Butler mentioned his own stricken testimony in responding to Dyer's renewed Rule 50 motion, he did not cite to or otherwise rely on Cardillo's testimony.  We find this singular piece of equivocal testimony insufficient as a matter of law to support Butler's contention that Dyer knew he was leaving as of August.  *See Warne Invs.*, 219 Ariz. at 194, ¶ 33, 195 P.3d at 653.

why the clients identified by Butler were not charged or had not paid for the services provided.

¶43 At the close of Butler's case, Dyer moved for JMOL on Butler's breach of the duty of good faith and fair dealing claim that Dyer had concealed income from estate planning clients. Dyer argued Butler's testimony was based on supposition and no actual evidence was shown in the D&B records that Dyer had received any funds concealed from Butler. The court granted the motion. At the close of evidence, Dyer moved for JMOL on Butler's contract claim related to the estate planning proceeds. Dyer again argued no evidence had been presented that money was actually received from the clients for whom Butler claimed Dyer worked but did not share his fees. Dyer also argued Butler had produced no evidence that Dyer had accepted money outside the partnership. Dyer contended the jury could not reasonably conclude the partnership received funds that were not distributed. The court granted the motion, acknowledging Butler's testimony, but stating the evidence was "really speculative more than circumstantial."

¶44 Butler contends on appeal that a reasonable jury could have concluded Dyer was performing work on the side and secreting the proceeds based on the existence of estate planning files on the firm's computer for which Butler did not receive a share of fees. This argument is based entirely on Butler's testimony that the partners' practice was to record all time and to notify one another regarding work performed for free, and based on Dyer's testimony that two of the listed clients had been billed for work and paid in full.[9]

¶45 A court will not permit a jury to draw speculative inferences that are not based on probative facts. *Matts v. City of Phoenix*, 137 Ariz. 116, 119, 669 P.2d 94, 97 (App. 1983). A plaintiff must prove the fact of damages, which cannot be based on speculation. *See Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 521, 446 P.2d 458, 464 (1968). Speculation or evidence creating a slight doubt about the facts is insufficient to withstand a motion for JMOL. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d

---

[9] Dyer testified the monies were paid either to his prior law firm or D&B and deferred to Cardillo to provide specific information. Cardillo testified that matters related to the two clients had been billed and the last payment from one of them had been received in 2002 and a balance of $2,800 remained. No further payment was received, however, because the client died. Cardillo was not asked whether the other client had paid.

1000, 1008 (1990) (stating the standard that a "scintilla" of evidence or evidence creating the "slightest doubt" is insufficient to withstand a motion for summary judgment); *Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 290, ¶ 14, 44 P.3d 164, 168 (App. 2002) (noting the test for granting a motion for JMOL is the same as the test for granting a motion for summary judgment).

**¶46** Butler provided no evidence the partnership had received funds that were not properly allocated or that Dyer did work "on the side" and had received funds not shared with Butler. Absent some evidence that funds were received, any conclusion that such funds existed and Dyer failed to share them was entirely speculative. Butler did not present facts from which a reasonable jury could conclude Dyer had received funds that were not properly allocated to Butler. The court did not err in granting Dyer's Rule 50 motion.[10]

### III. Evidentiary Rulings

**¶47** Butler argues the trial court erred in refusing to admit into evidence three handwritten notes - Exhibits 5, 9, and 10 - memorializing his discussions with Dyer on June 1, December 1, and December 10, 2007.

**¶48** On direct examination, Butler described in detail a meeting with Dyer on June 1, 2007, in which, according to Butler, the parties discussed their respective obligations regarding the rent, copier, and telephone contracts. Butler testified Dyer told him it would not be fair for Butler to pay only twenty-five percent for the expenses and leave Dyer "holding the bag" for the rest and they had an obligation to each other to pay the expenses on a sixty/forty basis until the end of the commitments. Butler further testified that, immediately after the meeting, he wrote down what had transpired, and he offered the document into evidence as Exhibit 5. Dyer objected on relevance and hearsay grounds. Butler argued the note was nonhearsay, asserting it had independent legal significance because it was a document that recorded facts about what was said, regardless whether the words recorded were true, and was evidence of the fact of negotiation and the fact of a contract. Butler further argued that, even if the note was hearsay, it was admissible under an

---

[10] Because we conclude Butler did not present sufficient evidence to support his claim that funds were received but not properly allocated, we need not address his argument that certain testimony by Dyer should have been excluded for nondisclosure.

exception to the rule against hearsay as a present sense impression. *See* Ariz. R. Evid. 803(1). The court sustained the objection, refusing to admit the note as evidence, but allowed Butler to use the note to refresh his recollection. Similarly, Butler testified in detail about the meetings he had with Dyer on December 1 and 10, and then offered into evidence notes of those meetings as Exhibits 9 and 10. Again Dyer objected, Butler reiterated his arguments, and the court denied admission of the exhibits, but allowed oral testimony from the exhibits.

¶**49** We will not disturb the trial court's decision on the admissibility of evidence absent an abuse of discretion and resulting prejudice. *Acuna v. Kroack*, 212 Ariz. 104, 108, ¶ 15, 128 P.3d 221, 225 (App. 2006) (citation omitted). Also, we will not presume prejudice; instead, it must affirmatively appear from the record. *Rimondi v. Briggs*, 124 Ariz. 561, 565, 606 P.2d 412, 416 (1980). An abuse of discretion exists if the record, viewed in the light most favorable to upholding the ruling, lacks competent evidence to support that ruling. *Jenkins v. Jenkins*, 215 Ariz. 35, 37-38, ¶ 8, 156 P.3d 1140, 1142-43 (App. 2007) (citations omitted).

¶**50** We find no abuse of discretion. Even assuming the notes could properly have been admitted, the record does not demonstrate prejudice. Butler testified extensively and fully regarding the three meetings, outlining the discussions and the terms on which the parties allegedly agreed and disagreed. He described how he took notes immediately after the meetings, and the jury was made aware the exhibits were those notes. Butler testified before the jury using the exhibits, and in doing so conveyed the contents of those exhibits to the jury. The jury knew Butler had taken notes and what the notes contained. The admission of the exhibits would have conveyed nothing more to the jury than it already knew and would have been cumulative; the decision not to admit the exhibits did not deprive the jury of any additional probative evidence. Consequently, exclusion of the notes did not prejudice Butler.

> IV. *The Accounting Claim*

¶**51** Butler also argues the trial court abused its discretion in dismissing his accounting claim without prejudice rather than with prejudice. As we have previously noted, Butler's complaint included a demand for a full accounting of the partnership as an alternative to his contract claim. In his answer, Dyer joined in the request, asserting a full accounting of all assets was necessary. The court requested briefing on whether the court or jury should conduct the accounting and whether the accounting should be conducted before the other claims were adjudicated.

In his memorandum on the accounting claim, Butler suggested the claim should be dismissed and not proceed to trial because neither he nor Dyer had disclosed the necessary comprehensive valuation of firm assets. Butler did not, however, file a formal motion to dismiss the accounting claim.

¶52        The accounting matter remained an issue, and Butler presented evidence at trial regarding some assets of the firm still to be divided.  At the close of his case, Butler moved to dismiss the accounting claim.  Dyer argued that, since he and Butler had separated, Butler insisted the partnership could not be dissolved and had prevented its winding up.  Dyer argued that, by moving for dismissal, Butler was saying the partnership could not be wound up and the assets could not be divided.  The court expressed concern it had not heard sufficient evidence of the assets to do an accounting.  Dyer explained he intended to use exhibits introduced by Butler to show the cost basis of various firm assets.  Butler argued Dyer was required to disclose the figures and because he had not done so, the accounting claim should be dismissed as a disclosure violation.  When the court asked Butler what would happen with the partnership assets if the accounting claim was dismissed, Butler responded that, if the claim was dismissed with prejudice, it would be as if the claim had not been brought and the parties would retain whatever assets they currently had in their possession.  The court noted that if it dismissed the accounting claim, the dismissal would be without prejudice "because you still have the dispute."

¶53        The court dismissed the accounting claim without prejudice. In dismissing the claim, the court noted it was troubled by the motion, in part because dismissing the claim would leave the accounting of the partnership assets unresolved.  The court, however, found Dyer's failure to disclose an asset valuation was prejudicial to Butler.

¶54        Sanctions for failure to comply with discovery rules must be appropriate to the circumstances.  *Roberts v. City of Phoenix*, 225 Ariz. 112, 119-20, ¶ 27, 235 P.3d 265, 272-73 (App. 2010).  We review for an abuse of discretion a court's decision to impose sanctions for discovery violations. *Id*. at 119, ¶ 24, 235 P.3d at 272.  An abuse of discretion occurs when a court exercises its discretion in a manner that is manifestly unreasonable or based on untenable grounds or reasons.  *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42, ¶ 11, 178 P.3d 511, 514 (App. 2008).

¶55        The trial court did not abuse its discretion.  The claim at issue is not a civil action for damages, but involved the winding up of a

partnership.  As noted by the court, in dismissing the accounting claim, the court was deferring disposition of the partnership assets, with various assets being held by one partner or the other and no final resolution of their ownership.  Given that the partnership assets remain in limbo as a result of the dismissal, leaving the courts available to the partners to assist in disposing of those assets sometime in the future was not unreasonable.

¶**56**　　　Butler contends allowing Dyer to reassert the claim in the future results not in exclusion of the non-disclosed evidence but merely delay.  We disagree.  The sanction did result in exclusion.  The undisclosed evidence was excluded from this trial on the ground the court found it would be prejudicial to Butler to allow the disputed testimony.  The purpose of excluding the non-disclosed evidence was to prevent prejudice; that purpose was accomplished and is not undermined by allowing a claim to be brought in the future.  If Dyer were to bring an accounting claim to wind down the partnership, and in doing so complied with the disclosure requirements, Butler would not be prejudiced.  The court's decision was not groundless or based on untenable reasons.  We find no abuse of discretion in dismissal of the claim without prejudice.

### V.　　The Breach of Contract Claim

¶**57**　　　Butler argues the trial court erred in denying his motion for new trial on his breach of contract and breach of the duty of good faith and fair dealing claims based on alleged admissions by Dyer that he felt responsible for sixty percent of the rent and other expenses.

¶**58**　　　Butler moved for a new trial on the grounds that the damages were insufficient and the verdict was not justified by the evidence or was contrary to law.  *See* Ariz. R. Civ. P. 59(a)(5), (8).  We will only reverse the court's denial of such a motion if the denial reflects a manifest abuse of discretion given the record and circumstances.  *Styles v. Ceranski*, 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App. 1996).  We give the trial court the greatest possible discretion because that court has heard the evidence and observed the witnesses first-hand.  *Mammo v. State*, 138 Ariz. 528, 533-34, 675 P.2d 1347, 1352-53 (App. 1983).  We view the evidence in the light most favorable to upholding the jury verdict and will affirm a decision denying the motion for new trial if substantial evidence exists that could lead reasonable persons to find the ultimate facts sufficient to support the verdict.  *Styles*, 185 Ariz. at 450, 916 P.2d at 1166.

¶**59**　　　The jury found in favor of Dyer on Butler's breach of contract claim.  Butler argues Dyer made several admissions that compel

finding Dyer was liable to Butler. Butler notes Dyer, in answering the complaint, admitted he and Butler, as law partners, had entered an enforceable contract by which they agreed to share all receivables, expenses, and obligations on a sixty/forty basis. Butler also relies on a statement in Dyer's affidavit, admitted into evidence, in which Dyer stated that, beginning April 1, 2007, the expenses of their former law firm became shared expenses between Butler and the new firm (D&D), with D&D responsible for sixty percent of those expenses. Butler further notes Dyer testified at trial that, after April 1, 2007, they continued to share expenses on a sixty/forty basis as part of the parties' continued agreement and he (Dyer) was responsible for his share of the rent after he moved out.

¶60　　　　These expressions of responsibility do not establish liability to Butler. Butler argued to the jury that his breach of contract claim was based on an agreement reached on March 31 and June 1, 2007, whereby Dyer and Butler purportedly agreed to be *personally responsible to each other* for the rent and other expenses until the end of those commitments. Dyer denied negotiating or entering any such agreement with Butler. Dyer's admissions express general responsibility of the partnership, not his personal responsibility to Butler. When testifying about why he had been willing to be responsible for the entire remaining balance of the rent provided Butler vacated the space, Dyer explained the rent was a partnership obligation he wanted satisfied. Acknowledging responsibility for rent owed by a partnership of which he was a partner is not an admission by Dyer that he was personally responsible to Butler for payment of sixty percent of the rent and expenses for their terms.

¶61　　　　The jury was well-positioned to place these "admissions" in context in determining what, if any, personal liability Dyer had relative to Butler's breach of contract claim. We find no abuse of discretion in the court's denial of Butler's motion for new trial based on Dyer's alleged admissions.

　　　　　*VI.　Butler's Offer of Judgment*

¶62　　　　Butler also argues the trial court erred in denying his request for sanctions based on his offer of judgment on his claim to recover his share of the interpleaded Fredricksen funds. *See* Ariz. R. Civ. P. 68(g). We disagree.

¶63　　　　In January 2009, Dyer instructed Fidelity that $7,722.17 should be paid to D&B and $500.00 should be paid to STK. The letter did not indicate the address to which the D&B payment should be made.

Apparently, two checks for $7,722.17, dated February 25 and March 11, were sent to the 2800 North Central Avenue office, where Butler was still located. Because Dyer contended Butler had previously appropriated firm receivables for himself, Dyer asked Fidelity to stop payment. On March 17, Butler's office manager questioned Cardillo regarding the checks, advising that Butler claimed entitlement to forty percent of the money earned before April 1, 2007. On March 27, Dyer sent another letter to Fidelity, explaining that D&B no longer existed and he and Butler disputed where the payment should be deposited and how it should be distributed. Dyer requested that Fidelity reissue a check in the amount of $7,722.17 in the name of D&B and send it to him at STK, and if Fidelity chose not to deliver the funds to him, it could interplead the funds. On March 30, Butler sent a letter to Fidelity asking that it not disburse the money to Dyer. Butler told Fidelity he was entitled to $2,173.15 of those funds, and if Dyer would not agree to the distribution, he demanded the money not be disbursed but placed in trust. Butler followed up his letter with an e-mail stating that if the check was made out to D&B and sent to Dyer, Butler would not receive his share. On April 17, 2009, Dyer thanked Fidelity for its attempts to assist in resolving the dispute, and noted that interpleading the funds would provide a forum to resolve other issues and wind up the partnership. Butler responded by filing his complaint.

**¶64** In his complaint, Butler alleged Fidelity was holding $5,432.88 belonging to D&B, of which he was entitled to forty percent, or $2,173.15. On August 26, 2009, the parties stipulated the funds should be tendered into the court pending further court order. The funds were interpleaded by Fidelity on September 4, 2009. In his Initial Rule 26.1 Disclosure Statement, dated October 19, 2009, Dyer acknowledged "$2,173.50" [sic] of those funds should have been allocated to Butler.

**¶65** On September 28, 2010, Butler mailed an offer of judgment to Dyer, by which Butler offered to settle his second and fourth claims for relief in exchange for judgment entered in his favor and against Dyer in the total amount of $2,500.[11] Dyer did not accept the offer, and as we have

---

[11] The offer stated it included "all damages, taxable court costs, and interest applicable to the Second Claim for Relief." It did not specifically state that it included interest with respect to the fourth claim for relief (for the interpleaded Fredricksen funds). Under Rule 68, however, "the monetary award to be made shall be set forth in the offer as a specifically stated sum, which shall be inclusive of all damages, taxable court costs,

noted, the trial court subsequently granted partial summary judgment in favor of Dyer on Butler's second claim for relief.

¶66      In their joint pretrial statement, the parties stipulated as to how the Fredricksen funds should have been allocated. At trial, while discussing jury instructions, the court asked if an instruction was necessary with regard to the funds or whether the court could enter judgment as a matter of law since the parties had agreed to the allocation. Dyer and Butler agreed the matter need not be submitted to the jury, with no discussion suggesting Dyer would be subject to Rule 68 sanctions as a consequence of the agreement. The court instructed the jury that the issues concerning the Fredricksen funds had been resolved by the parties.

¶67      After the jury verdict, Butler filed a motion for sanctions based on his prior offer of judgment, arguing that Dyer did not obtain a more favorable result at trial than the offer Butler had made to settle the claim. *See* Ariz. R. Civ. P. 68(g). Butler argued that his offer of judgment in the amount of $2,500 had included interest and, once that interest was subtracted from the $2,500 offer, the remaining $2,163.01 was $10.14 less than the $2,173.15 Butler received from the interpleader claim. Butler contended Dyer had therefore not obtained a judgment more favorable than the offer and Butler was entitled to an award of sanctions.

¶68      In its judgment, the court denied Butler's Rule 68(g) motion without explanation. The judgment also instructed the clerk of the court to disburse $2,173.15 to Butler from the interpleaded funds. The court ordered each party to bear his own attorneys' fees and costs, concluding that each had prevailed in part on the contract claim.

¶69      Under Rule 68, an offer of judgment for a monetary award includes all damages, taxable court costs, interest, and attorneys' fees sought in the case. Ariz. R. Civ. P. 68(b). An offeree who rejects an offer and does not later obtain a more favorable judgment must pay reasonable expert witness fees and double the taxable costs as a sanction. Ariz. R. Civ. P. 68(g). In comparing the offer to the resulting judgment, any fees or costs included in the offer must be excluded before comparing the remaining amount, representing damages, to the amount of damages awarded. *See Hales v. Humana of Ariz., Inc.*, 186 Ariz. 375, 377-78, 923 P.2d 841, 843-44 (App. 1996). The purpose of Rule 68 is to encourage settlement

_____

interest, and attorneys' fees, if any, sought in the case." Ariz. R. Civ. P. 68(b).

and discourage protracted litigation. *McEvoy v. Aerotek, Inc.*, 201 Ariz. 300, 305, ¶ 25, 34 P.3d 979, 984 (App. 2001). We review *de novo* the interpretation and application of a court rule. *Greenwald v. Ford Motor Co.*, 196 Ariz. 123, 124, ¶ 4, 993 P.2d 1087, 1088 (App. 1999).

**¶70** On appeal, Butler argues that, when prejudgment interest is subtracted from his $2,500 offer, the offer was more favorable to Dyer than the judgment. Dyer argues, *inter alia*, that Rule 68 is inapplicable because the parties settled the issue before the matter ever went to the jury.

**¶71** We agree with Dyer. The Fredricksen funds were assets of D&B, which, although no longer a viable entity, had not yet been wound up as a partnership. The litigation contemplated an accounting of the partnership assets. Notably, Dyer did not dispute the amount of the funds that should be allocated to Butler. Once the accounting claim had been dismissed, however, the parties settled the dispute over the distribution of the interpleaded funds in accordance with the allocation that had not been disputed. Butler did not raise the issue of Rule 68 sanctions when the parties agreed the matter need not go to the jury. Further, under Rule 68, the fact an offer has been rejected does not preclude a subsequent offer. Ariz. R. Civ. P. 68(h). Here, although there was no formal subsequent offer and acceptance, the parties did settle the issue by agreeing the court should order that $2,173.15 be distributed to Butler from the interpleaded funds. Sanctions resulting from the earlier offer were not part of that agreement.

**¶72** The goal of Rule 68 is to encourage settlement. It would be a disincentive to settlement to allow an offeror to recover sanctions when the parties settle an issue and sanctions were not part of the agreement.

**¶73** Moreover, Dyer did obtain a judgment more favorable than the offer. The offer required Dyer to accept judgment against him for $2,500. The court's final judgment, however, did not enter judgment against Dyer on that particular claim. The final judgment included, *inter alia*, judgment in favor of Dyer and against Butler on the breach of contract claim, except for the interpleader and trust funds; judgment in favor of Dyer and against Butler on the claim for breach of the duty of good faith and fair dealing; judgment in favor of Butler and against Dyer with respect to Butler's assault claim (with no damages); and judgment in favor of Dyer and against Butler for the estate planning damages sought by Butler. With respect to the interpleaded funds, however, in accordance with the parties' agreement, the court did not enter judgment in favor of or against either party. Instead, the court noted the parties had stipulated

to the amounts to which each was entitled, and simply ordered the clerk of the court to "disburse forthwith $2,173.15 to Everett S. Butler, . . . $3,259.73 to Robert O. Dyer, . . . and $2,289.29 to Dyer & Ducharme." No judgment was entered against Dyer with respect to the interpleaded Fredricksen funds.

### VII. Attorneys' Fees

¶74       Butler requests an award of attorneys' fees for the prosecution of his claims in the trial court, but offers no argument for reversing the court's decision denying fees to both parties. Consequently, we affirm the trial court's ruling. Both Butler and Dyer request an award of attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A). In our discretion, we award reasonable costs and attorneys' fees as determined by this court to Dyer as the successful party on appeal, subject to Dyer's compliance with Rule 21, ARCAP.

### CONCLUSION

¶75       The trial court's judgment and rulings are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: MJT