NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

SWVP-GTIS MR, LLC,
*Plaintiff/Appellant*,

*v.*

PINAL COUNTY,
*Defendant/Appellee*.

No. 1 CA-TX 16-0017
FILED 8-14-2018

Appeal from the Arizona Tax Court
No. TX2011-000734
The Honorable Christopher T. Whitten, Judge

**VACATED; REMANDED**

COUNSEL

Rose Law Group, PC, Scottsdale
By Kelley A. Gorry, Logan V. Elia
*Counsel for Plaintiff/Appellant*

Helm, Livesay & Worthington, Ltd., Tempe
By Roberta S. Livesay
*Co-Counsel for Defendant/Appellee*

Pinal County Attorney's Office, Florence
By Cedric I. Hay
*Co-Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O H N S E N**, Judge:

**¶1**           SWVP-GTIS MR, LLC ("Southwest") appeals the tax court's judgment dismissing its appeal of a property classification made by the Pinal County Assessor.  For the following reasons, we vacate and remand the judgment.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**           According to the record, Southwest owns a tract of land near Florence consisting of about 4,000 acres of rangeland.  In January 2012, Southwest signed a lease with James Brett Marchant allowing Marchant and his company, Cross Cane, to run cattle on the property.  Marchant began with a herd of about 80 head, intending to run his ranch as a cow-calf operation, generating income from the sale of calves bred on the property.

**¶3**           Through a separate construction company, Marchant made a series of improvements on the land.  He installed large metal drinking basins and several miles of pipeline running to the property from a groundwater well (the "Pulte well") on adjacent land owned by a home builder.  Marchant also constructed and repaired fencing that allowed him to more efficiently rotate his herd on different sections of the land.  The overall fenced area on which he grazed his cattle included nearby land owned by the State and the Federal Bureau of Land Management.  Cross Cane did not have written leases allowing it to graze its herd on the government property, but Marchant understood the government had no objection to his continued use of the property for grazing.

**¶4**           Southwest applied to the County for an agricultural property tax classification.  After the County denied its application, Southwest filed a complaint in tax court that eventually encompassed tax years 2013 and 2014.

**¶5**           Shortly before trial, the tax court granted a motion *in limine* by the County that substantially limited the evidence Southwest was allowed

to offer concerning the property's qualification for an agricultural classification and its value. After the close of Southwest's case at trial, the court granted the County's motion for a directed verdict, finding that Southwest had not presented any reliable evidence that the property met the statutory requirements for an agricultural classification and thus that Southwest had failed to rebut the statutory presumption in favor of the County's administrative classification decision. *See* Ariz. Rev. Stat. ("A.R.S.") § 42-16212(B) (2018).[1]

¶6 We have jurisdiction over Southwest's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.04(G) (2018), -120.21(A)(1) (2018), -170(C) (2018) and -2101(A)(1) (2018).

## DISCUSSION

### A. Legal Principles.

¶7 Property may be classified as agricultural for purposes of property taxation through a two-step process. First, as relevant here, property used for grazing must have "a minimum carrying capacity of forty animal units and contain[] an economically feasible number of animal units." A.R.S. § 42-12151(3) (2018). Second, as relevant, the property must demonstrate "a reasonable expectation of operating profit, exclusive of land cost, from the agricultural use of the property." A.R.S. § 42-12152(A)(2) (2018). The tax court ruled that when the landowner leases the subject property to a rancher, the property's carrying capacity and profitability for purposes of an agricultural tax classification are determined based on the rancher's use of the property. Neither party contests this ruling on appeal.

¶8 When a landowner challenges a denial of a property classification request, the "classification as approved by the appropriate state or county authority is presumed to be correct and lawful." A.R.S. § 42-16212(B). "This presumption is one of fact, however, and is overcome when 'evidence contradicting the presumption is received and the trial court is bound to follow the usual rules of evidence in reaching the ultimate conclusion of fact.'" *Dep't of Prop. Valuation v. Trico Elec. Coop., Inc.*, 113 Ariz. 68, 70 (1976) (quoting *Graham County v. Graham County Elec. Coop., Inc.*, 109 Ariz. 468, 470 (1973)) (statute later renumbered). "It is, of course, necessary that competent evidence be presented" for the proponent to overcome the

---

[1] Absent material revision after the relevant date, we cite a statute's current version.

presumption.  *Maricopa County v. Sperry Rand Corp.*, 112 Ariz. 579, 581 (1976).

**B.      Discovery Preceding the Motion *in Limine.***

**¶9**           Southwest served an initial disclosure statement in 2013 stating that Cross Cane had constructed four miles of pipeline "to connect to a local well to provide an additional water source" for cattle on the property.  Southwest also served an initial expert report, dated August 22, 2013, stating that although there was "no permanent water source on the property," Cross Cane "pipes water from another property to this property for livestock use."  Otherwise, little substantive discovery was taken until after the tax court ruled in May 2015 that the property's classification would depend on the profitability of Cross Cane's operation rather than on what Cross Cane paid Southwest in rent.

**¶10**          When it made that ruling, the court set a discovery cutoff of September 8, 2015.  The County then served discovery requests asking, among other things, that Southwest identify "the type and location of all water sources including water hauled to the Subject Property."  The County also asked Southwest to describe each water source and specify the depth and capacity of any wells used for agricultural purposes and provide "certificates of well registrations from the Arizona Department of Water Resources," as well as "any annual reports to the Arizona Department of Water Resources . . . disclosing amount of groundwater withdrawn or surface water used."

**¶11**          When Southwest responded to the County's discovery requests on July 30, 2015, it stated that the property was served by a "nine mile long water line to provide water to water tanks in each pasture."  Notwithstanding its disclosure in 2013 of a "local well" that served the property, however, Southwest's responses contained no information or documents about the Pulte well or any other well serving the property.  Southwest disclosed several well registration certificates, but none of them was relevant to the property or to Cross Cane's grazing operations on the property.

**¶12**          The County deposed Southwest's valuation expert on October 23, 2015, but he was unable to provide any specifics about the property's water sources.  The County set Marchant's deposition for January 14, 2016, and as that date approached, the County reiterated its requests for information about the property's water sources.  By email dated December 10, 2015, the County demanded to know "the source of the water for the

cattle," and stated, "Please ask your client to supply the details so we can continue to prepare for Mr. Marchant's deposition." Four days later, Southwest's lawyer forwarded a response from Marchant that referenced "an irrigation well" that served the property. On January 12, 2016, Southwest emailed the County with information from Marchant about the location of the Pulte well. The County responded by email later that same day, stating it needed more precise information because there were eight wells located on the cited off-site parcel. The County demanded the registration number for the well that supplied the property and copies of receipts or invoices reflecting Marchant's payment for the water. The next day, January 13, Southwest emailed the County the registration number of the Pulte well and relayed Marchant's statement that he had no written agreement for use of the well. It also provided the County with a hand-drawn map showing the location of the well.

¶13　　　At Marchant's deposition on January 14, the County examined him at length about the Pulte well, its size, the size of the pump, and the arrangement he had with the owner of the well to pump from the well. Eight days later, Southwest forwarded to the County digital images of photographs Marchant had taken that week at the well location, which Southwest stated matched the location of the referenced-numbered well in the records of the Arizona Department of Water Resources. Southwest also provided the County with a verified statement identifying the Pulte well by registry number.

¶14　　　On February 26, 2016, the County served a supplemental disclosure statement in which it asserted that Cross Cane had no legal right to use water from the Pulte well to graze cattle. From that, the County asserted that Southwest could not show that Cross Cane could sustain a profitable grazing operation on the property because Cross Cane had no "legal water source" for its grazing. The County also asserted that Cross Cane's cattle-grazing operation "depends on an illegal use of property belonging to the United States Bureau of Land Management and the State of Arizona."

## C.　　The Motion and Its Consequences.

¶15　　　On March 9, 2016, roughly two months before trial was to begin, the County moved *in limine* to preclude certain testimony by Southwest's valuation expert. The County argued the expert's opinion assumed that Cross Cane would be able to continue to draw water from the Pulte well and would be able to continue to use the government land for grazing. The County asserted that Southwest had not identified the Pulte

well in response to discovery requests and did not provide information about the well until Marchant's deposition and in the days thereafter. The County also contended that it was not until Marchant's deposition that it learned that Cross Cane's grazing operation on the property used the government land.

¶16     The County argued the court should sanction Southwest for its untimely disclosure and incomplete and tardy discovery responses under Arizona Rule of Civil Procedure 37 by precluding any expert testimony at trial of the value of the property or the profitability of Cross Cane's grazing operation that presumed continued use of the Pulte well as a water source and continued use of the government grazing rights. Over Southwest's opposition and after hearing oral argument, the tax court granted the motion.[2]

¶17     At trial, consistent with its decision on the County's motion, the court did not allow Marchant or Southwest's expert witness to take into account the Pulte well or the government grazing land when testifying about whether the property afforded Cross Cane a reasonable expectation of operating profit. In the absence of such testimony, Southwest's challenge to the tax classification failed. As the court explained in granting the County's motion for directed verdict:

> For each of the two tax years in question, *in reality*, Cross Cane grazed hundreds of cattle on the subject property in the first four months of each year, and less in other months, and might have had a reasonable expectation of operating profit. And, *in reality*, the carrying capacity of the land might have exceed[ed] forty animal units. Because of the discovery sanctions, however, the actual expected profitability and the actual animal unit carrying capacity were not germane; those projections had to be made based on the fictional state of the land without the additional water and without the State or BLM lands.

---

[2]     In the alternative, the County's motion argued that Arizona groundwater law did not permit Cross Cane to draw water from the Pulte well. The County argued that because Cross Cane therefore had no legal source of water, Southwest could not show that Cross Cane's grazing operation had a reasonable expectation of profitability. The tax court did not rule on that issue. In the absence of a decision by the tax court on the matter, we decline to address it on appeal.

[Southwest] offered no *reliable* evidence, for either tax year, regarding whether there would have been a reasonable expectation of operating profit or what the carrying capacity of the land would have been absent the . . . well water source or State and BLM grazing lands which were excluded as a discovery sanction.

**D.      Rule 37(c) *and the Ruling on the Motion* in Limine.**

**¶18**          We review the tax court's ruling excluding evidence for "abuse of discretion or legal error and prejudice." *Zimmerman v. Shakman*, 204 Ariz. 231, 235, ¶ 10 (App. 2003).  We review *de novo* the interpretation of court rules.  *State v. Salazar-Mercado*, 234 Ariz. 590, 592, ¶ 4 (2014).  *See also McMurty v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 258, ¶ 44 (App. 2013). "[A] court abuses its discretion where the record fails to provide substantial support for its decision or the court commits an error of law in reaching the decision." *Files v. Bernal*, 200 Ariz. 64, 65-66, ¶ 2 (App. 2001).  When the court finds one party has abused discovery or disclosure obligations, the sanctions imposed "must be appropriate to the circumstances and must be preceded by due process." *Roberts v. City of Phoenix*, 225 Ariz. 112, 119-20 (App. 2010).

**¶19**          In 2016, when the tax court ruled on the County's motion *in limine*, Rule 37(c)(1) provided as follows:

A party who fails who fails to timely disclose information required by Rule 26.1 shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . the information . . . not disclosed, except by leave of court for good cause shown.  A party or attorney who makes a disclosure pursuant to Rule 26.1 that the party or attorney knew or should have known was inaccurate or incomplete and thereby causes an opposing party to engage in investigation or discovery, shall be ordered by the court to reimburse the opposing party for the cost, including attorney's fees of such investigation or discovery.  In addition to or in lieu of these sanctions, the court on motion of a party or on the court's own motion, and after affording an opportunity to be heard, may impose other appropriate sanctions.

**¶20**          Southwest did not disclose the Pulte well in its July 2015 responses to the County's discovery requests seeking detailed information

about the property's sources of water. Nor did it disclose the particulars of the well and the additional grazing land before the discovery cutoff in September 2015. The County's motion *in limine* argued that, under Rule 37(c), Southwest's failure to timely disclose the Pulte well and the additional grazing land precluded Southwest from using that evidence at trial. The version of Rule 37(c)(1) in effect at the time, however, allowed preclusion of evidence a party failed to disclose evidence "unless such failure is harmless." Under that rule, therefore, the County's motion required the tax court to consider whether Southwest's disclosure violations were "harmless."

**¶21** The County's motion did not assert that Southwest's untimely disclosure of the Pulte well or the additional grazing land caused the County any harm or prejudice whatsoever. The County had stipulated with Southwest to take depositions beyond the discovery cutoff, and, as noted, the County did not depose Marchant until January 14, 2016. And the record makes plain that although Southwest did not disclose specifics about the Pulte well until just before Marchant's deposition, the untimely disclosure did not impair the County's defense of the property's tax classification. On this record, the County can hardly claim it was "ambushed" by the untimely disclosure and late discovery responses. The County was able to and did examine Marchant in detail during his deposition about the Pulte well and used the well registration number to gather associated information from the Department of Water Resources. Within six weeks after the deposition, the County had marshalled the facts about the well and the grazing rights and served a detailed supplemental disclosure statement outlining its contention that Southwest could not show that Cross Cane was legally entitled to draw water from the well for its cattle and was not entitled to use the associated government grazing land. Further, as noted, in its motion *in limine*, the County argued at length and in considerable detail that Arizona groundwater law did not permit Cross Cane to use water from the Pulte well for grazing purposes.

**¶22** Although it cited no prejudice in its motion *in limine*, the County argues on appeal that if the tax court had denied that motion, the County would have been prejudiced because it would not have had time before trial "to engage its own expert in a new analysis of newly disclosed facts." But the County did not need to engage in any new analysis of the legality of the Pulte well. As noted, it was able to and did mount a full-scale attack on the legality of Cross Cane's use of the Pulte well in its motion *in limine*.

¶23       Instead, the prejudice the County cites on appeal would have arisen only if the tax court had granted the County's motion but then allowed Southwest to offer previously undisclosed evidence of water sources other than the Pulte well.  Indeed, Southwest argued in response to the County's motion that even if Cross Cane could not use the Pulte well, it could use other water sources, including a stock pond.  On appeal, the County argues that it would have been prejudiced if the court had allowed Southwest to argue that Cross Cane did not need the Pulte well or the other grazing land to prove the value of the property: "Even if [Southwest] were to suddenly disclose another water source, there was no time for the county to investigate its legality . . . , its sufficiency to meet the needs of the statutory minimum number of animal units . . . or any other issues that proper disclosure would have allowed."

¶24       The County's contention is misplaced.  As Southwest points out, the inquiry under Rule 37(c) was whether the late disclosure of the Pulte well and the additional grazing rights harmed the County – not hypothetically whether the County would have been harmed if the tax court had allowed Southwest to offer still other purportedly new evidence concerning stock ponds and irrigation rights.  The County argues on appeal it was prejudiced by having to review groundwater certificates that Southwest produced in discovery that turned out to be irrelevant to the property at issue.[3]  But the County makes no showing that it would have been harmed at trial by Southwest's use of evidence of the Pulte well and the government grazing land.[4]

¶25       "Delay, standing alone, does not necessarily establish prejudice.  Every late disclosure will involve some delay, but the relevant question must be whether it is harmful to the opposing party or to the justice system."  *Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 288 (1995).  "[P]rejudice is not presumed but must appear from the record."  *Creach v. Angulo*, 186 Ariz. 548, 550 (App. 1996).  Further, "as a general proposition, sanctions for failure to obey a trial court's orders should be limited to

---

[3]       Although Rule 37(c)(1) allowed the court in some circumstances to impose sanctions when a disclosure violation caused the opposing party to incur expense, the record does not show that the County asked the tax court to impose any remedy other than preclusion.

[4]       Due to conflicts with the court's calendar, trial in the matter ultimately was continued from May to September 2016.

achieve their desired result." *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 153, ¶ 40 (App. 2009).

**¶26** In the absence of any showing by the County that Southwest's disclosure violations caused the County harm, the tax court erred in granting the County's motion to preclude evidence of the Pulte well and the government grazing land as a discovery sanction under Rule 37(c).

## CONCLUSION

**¶27** Because the County did not demonstrate that it was prejudiced by Southwest's untimely disclosure of the Pulte well and the government grazing rights, the tax court erred by sanctioning Southwest by precluding it from relying on that evidence at trial. Accordingly, we vacate the tax court's judgment dismissing Southwest's First Amended Complaint, and remand for a new trial.

